**ALABAMA LIBERTARIAN PARTY and John Sophocleus, Plaintiffs,**

v.

**ALABAMA PUBLIC TELEVISION and Allan Pizzato, Director, Alabama Public Televison, Defendants.**

No. CIV.A.02–T–1077–N.

United States District Court, M.D. Alabama, Northern Division.

Oct. 3, 2002.

**1214**

Jeffrey W. Bennitt, Robyn G. Bufford–Bennitt, Bennitt & Bennitt, Birmingham, AL, for plaintiffs.

Todd Gray, Michael D. Hays, Theodore L. Radway, Dow, Lohnes & Alberton PLLC, Washington, DC, for defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

In this lawsuit, plaintiff Alabama Libertarian Party and its candidate for governor, plaintiff John Sophocleus, challenge the requirement that, in order to partici-pate in a gubernatorial debate sponsored by Alabama Public Television (APT) and others, candidates must demonstrate that they have obtained the preference of five-percent of the voters in an independent poll conducted by a recognized polling organization. The named defendants include APT and its director, Allan Pizzato. The plaintiffs' challenge is based on the first and the fourteenth amendments to the United States Constitution as enforced through 42 U.S.C.A. § 1983. The court's jurisdiction has been properly invoked pursuant to 28 U.S.C.A. § 1331.

Currently before the court is the plaintiffs' motion for a preliminary injunction which would enjoin APT from broadcasting the October 20, 2002, gubernatorial debate unless Sophocleus is allowed to participate.[1] For the reasons stated below, the plaintiffs' motion for a preliminary injunction will be denied.[2]

## I. BACKGROUND

In 2000, the Libertarian Party of Alabama received enough votes in a statewide election to qualify as a political party in Alabama. This allows the party to field a candidate in the 2002 election cycle without having to meet any further requirements. 1975 Ala.Code § 17-7-1. In this election year, Sophocleus is the Libertarian Party's gubernatorial candidate.

The Alabama Educational Television Commission is a state agency, created pursuant to state law, 1975 Ala.Code § 16-17-1 through 16-17-19, whose stated mission is "to inspire, educate, inform and entertain the people of Alabama through non-commercial television and other communi-

---

1. The plaintiffs request only a preliminary injunction. They do not request a permanent one.

2. By agreement of both the plaintiffs and the defendants, the preliminary-injunction motion was submitted to the court on a joint stipulation of facts without an evidentiary hearing.

cations technologies."[3] The commission operates under the APT business name. The commission is governed by seven commissioners, who pursuant to statutory authority, have delegated APT's day-to-day operations to a professional staff, headed by Pizzato.

As part of its election coverage, APT, along with other private and public media entities in the Alabama Debates Partnership 2002, is sponsoring a debate on October 20 between the gubernatorial candidates.[4] This debate is the second between the candidates. The first took place on August 5, 2002, with Don Siegelman, the Democratic candidate, and Bob Riley, the Republican candidate, participating.

The Alabama Debates Partnership 2002 established a minimum eligibility criterion for participation in these debates. Specifically, APT required candidates to demonstrate that they had obtained at least five-percent of voter preference in an independent poll conducted by a recognized polling organization.

On June 12, 2002, APT sent a letter to Sophocleus inviting him to participate in the debates if he could demonstrate that he met the five-percent threshold requirement. A member of the executive committee of the Libertarian Party contacted APT to inquire whether a poll conducted by the Libertarian Party itself would meet this requirement, and the party executive was advised that it would not. However, in an effort to aid the Libertarian Party in

obtaining accurate poll results, one of the APT producers called the Birmingham News and asked it to include Sophocleus's name in its next poll.

Although Sophocleus did garner over five-percent of votes in some online polls, these polls did not comport with scientific sampling methodology, did not control for repetitive voting, and could have included responses by people ineligible to vote in Alabama.[5] Sophocleus concedes that he has not met the requisite five-percent showing of voter preference in any independent poll conducted by a recognized polling organization.

## II. DISCUSSION

Whether to issue a preliminary injunction lies within the sound discretion of the district court. *Frio Ice, S.A. v. Sunfruit, Inc.,* 918 F.2d 154, 159 (11th Cir.1990). The Eleventh Circuit Court of Appeals has established a four-prong test for the district court to apply when determining whether a preliminary injunction should issue. Under this test, the movant must demonstrate: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the potential harm to the defendant; and (4) that the injunction will not disserve the public interest." *Palmer v. Braun,* 287 F.3d 1325, 1329 (11th Cir.2002).

---

3. Joint Stipulation of Facts ¶ 5.

4. These entities include: The Birmingham News, The Huntsville Times, The Mobile Register, The Montgomery Advertiser, and Alabama Public Radio. The debates were organized by these groups, who collectively named themselves "The Alabama Debates Partnership 2002."

5. For example, in an opinion poll conducted by WACV AM 1170 radio on its website, So-

phocleus received 19 % of the responses, Siegelman 13 %, Riley 27 %, and Tim James, a Republican candidate who was defeated by Riley in the primary, 31 %. In another poll conducted by NBC13–TV on its website, Sophocleus received 20 % of the responses, to Riley's 37 % and Siegelman's 41 %. Both polls had disclaimers stating the results were not scientific and represented only the opinion of the users who participated.

The plaintiffs contend that there is a substantial likelihood that they will prevail on their claim that APT's five-percent threshold prerequisite for participation in the October 20 debate violates their first amendment rights. Based on *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998), and *Chandler v. Georgia Public Telecomm. Comm'n*, 917 F.2d 486 (11th Cir.1990), this court rejects the plaintiffs' contention, and finds that there is no substantial likelihood that the plaintiffs will succeed on the merits of their claim.

To determine whether restrictions on speech violate the first amendment, the Supreme Court and the Eleventh Circuit have adopted a "forum analysis," in which the "extent to which the Government can control access depends on the nature of the relevant forum." *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, 473 U.S. 788, 800, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985); *see also M.N.C. of Hinesville, Inc. v. United States Dep't. of Def.*, 791 F.2d 1466, 1472 (11th Cir.1986) (determining the nature of the forum is the first step to determine when analyzing constitutionality of restrictions on speech). Therefore, the first step in the court's analysis will be to identify what type of forum Alabama Libertarian Party seeks to access.

In *Perry Educ. Ass'n. v. Perry Local Educators' Ass'n.*, 460 U.S. 37, 45–46, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794 (1983), the Supreme Court identified three different categories of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum. Each category is defined by the level of access the public has historically had to the relevant space, and the greater the level of historic access, the more exacting is the scrutiny to be applied to the government regulations.

In *Arkansas Educ. Television Comm'n v. Forbes*, the Supreme Court held that "[t]he special characteristics of candidate debates support the conclusion that" state-owned public-television-station-sponsored-candidate debates are "a nonpublic forum." 523 U.S. at 680, 118 S.Ct. at 1643. The plaintiffs and the defendants do not contest that the debate in this case is a nonpublic forum, and that the nonpublic forum standard is the appropriate standard by which to evaluate the five-percent threshold.

The standard used to assess the constitutionality of restrictions on access to nonpublic forums is well-settled. In *Perry*, the Supreme Court stated that restrictions were constitutional "as long as the regulation of speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." 460 U.S. at 46, 103 S.Ct. at 955. Additionally, the reasonableness of the restrictions are evaluated "in light of the purpose which the forum at issue serves." *Id.* at 49, 103 S.Ct. at 957; *see also Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, 473 U.S. 788, 806, 105 S.Ct. 3439, 3451 (1985) (using same standard to judge constitutionality of restriction to nonpublic forum); *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 682, 118 S.Ct. 1633, 1643, 140 L.Ed.2d 875 (1998) (same); *Chandler v. Georgia Public Telecomm. Comm'n*, 917 F.2d 486, 489 (11th Cir.1990) (same); *ISKCON Miami, Inc. v. Metro. Dade County, Florida*, 147 F.3d 1282, 1285 (11th Cir.1998) (same). Therefore, the court must evaluate whether the five-percent voter preference requirement is viewpoint neutral and reasonable in light of the forum's purpose.

The court begins its analysis with the Eleventh Circuit's opinion in *Chandler* and the Supreme Court's opinion in *Forbes*. In *Chandler*, decided before *Forbes*, the

Eleventh Circuit denied an injunction requested by the Georgia Libertarian Party candidate who was excluded from a candidate debate by the Georgia Public Telecommunications Commission. The commission believed a debate between only the Democratic and Republican candidates would be of the greatest interest and benefit to the citizens of Georgia. The Georgia Commission had a similar purpose to that of APT in this case, and the Eleventh Circuit held that the commission had made a "content-based decision" when excluding the candidate, but that the decision "promoted the commission's function, was 'reasonable' and was 'not an effort to suppress expression merely because public officials oppose the speaker's views.'" *Chandler*, 917 F.2d at 489 (internal quotations omitted).

Eight years after *Chandler*, the Supreme Court heard *Forbes*, and implicitly approved of the Eleventh Circuit's ruling in *Chandler*. The Court reversed the Eighth Circuit Court of Appeals, and upheld the Arkansas Educational Television Commission's decision to exclude an independent political candidate from a debate based on his "objective lack of [public] support." *Forbes*, 523 U.S. at 682, 118 S.Ct. at 1644. The Court held that the decision to exclude was "a reasonable, viewpoint-neutral exercise of journalistic discretion consistent with the First Amendment." *Id.*

Both *Chandler* and *Forbes* upheld the constitutionality of restrictions to candidate debates based on lack of public support and voter interest, which are similar to the challenged restriction in this case. The Libertarian Party and Sophocleus have failed to demonstrate how this case does not fall squarely within the holdings of both *Chandler* and *Forbes*.

The plaintiffs first argue that *Forbes* is inapplicable to this case because Forbes was an independent candidate, and not a candidate from a recognized political party, as is Sophocleus. However, this distinction was rejected as irrelevant in both *Forbes* and *Chandler*. In *Forbes*, the Supreme Court stated that the only relevant standard to evaluate restrictions on access to public-television-sponsored-candidate debates was whether the restrictions were viewpoint neutral and reasonable in light of the purpose of the forum. 523 U.S. at 682, 118 S.Ct. at 1643. The fact that Forbes was an independent candidate played no part in the Court's reasoning, and the finding that the restriction was reasonable was not based on Forbes's status as an independent candidate but rather on the fact that he did not have adequate public support.

Furthermore, in *Chandler*, the Eleventh Circuit expressly disregarded the importance of such a distinction when it denied Chandler's application for an injunction, even though Chandler was the Georgia Libertarian Party candidate, and as in this case, the party had received enough votes to qualify as a political party in Georgia. The Eleventh Circuit stated:

> "Were we to hold that such an invitation is required by the Constitution, we could see no principled basis upon which that rule could be limited to the candidate who has obtained a ballot position and not extended to all other serious candidates. A decision to air the debate between the two front runners, or the three who will appear on the ballot, or others, is appropriately made by the programmers undertaking to provide an educational program of sufficient interest to attract viewers."

917 F.2d at 489. Based on these decisions, the distinction the plaintiffs make between independent candidates and candidates from recognized political parties is irrele-

vant to the court's first-amendment analysis under *Forbes* and *Chandler*.

The plaintiffs next claim that APT's decision to exclude Sophocleus from the debate was based on his viewpoint, and they rely on four pieces of evidence to prove this. First, they argue that Pizzato's statement in the Mobile Register on September 21, 2002, that "what we choose to put on the air is our decision," raises an inference of viewpoint discrimination. Second, the plaintiffs assert they are being excluded from the debates because APT has deemed their viewpoint un-newsworthy. Third, the plaintiffs contend that the other candidates participating in the debate, Riley and Siegelman, did not have to submit polls showing they had obtained five-percent of voter preference. Finally, the plaintiffs contend that APT's statement that it would cancel the debate rather than include Sophocleus in it pursuant to a court order demonstrates its viewpoint discrimination against the plaintiffs.

The court finds that none of this evidence demonstrates that APT's five-percent threshold requirement is viewpoint discrimination. First, Pizzato's statement on September 21 and APT's statement that it would cancel the debates instead of being required to include Sophocleus were made after the five-percent requirement was adopted and were unrelated to the adoption of that requirement. *Cf. Searcey v. Harris*, 888 F.2d 1314, 1322 (11th Cir. 1989) (stating facts surrounding adoption of a regulation can support the inference that regulation was not viewpoint neutral). Therefore, the statements are not evidence that the five-percent requirement was adopted in order to discriminate against the Libertarian viewpoint, but rather they are evidence that the defendants believe, correctly, that the first amendment allows APT to choose what programming it will air. *See, e.g., Forbes*, 523 U.S. at 673, 118

S.Ct. at 1639 ("broadcasters alike are not only permitted, but indeed required, to exercise substantial editorial discretion in the selection and presentation of their programming."); *id.* at 680–81, 118 S.Ct. at 1643 (discussing fear that "a public broadcaster might choose not to air candidates' views at all" instead of being subject to controversy and the severe burden of requiring access by all candidates).

The plaintiffs' argument that excluding them from the debates demonstrates APT has deemed their viewpoint un-newsworthy has no merit. APT established a five-percent voter preference threshold which is applicable to every candidate. This decision was not based on a belief that candidates with less than five-percent support hold "viewpoints" which are unworthy, but rather on the objectively established "status" of the candidate. That is, as in *Perry*, there is no evidence that APT "intended to discourage one viewpoint and advance another;" rather, "it is more accurate to characterize the access policy as based on the *status* of the respective" candidates, and not their viewpoints. *Perry*, 460 U.S. 37, 49, 103 S.Ct. 948, 957, 74 L.Ed.2d 794 (emphasis in original). As in *Perry*, this regulation is based on the status of Sophocleus as a candidate who has not garnered five-percent of the voters' support, and not on the merits or lack thereof of his particular views.

Finally, the plaintiffs' argument that the other candidates did not have to submit polling numbers to qualify for the debate is an attempt to mislead the court. While neither candidate, Riley nor Siegelman, formally submitted polls indicating that he had obtained the preference of at least five-percent of voters, both parties to this lawsuit agree that both Riley and Siegelman "have consistently polled at over 40% 'voter preference in an independent poll conducted by a recognized polling organi-

zation.' "[6]  These numbers meet APT's requirement, and no differential treatment among Riley, Siegelman, and Sophocleus has occurred that would lead to an inference of viewpoint discrimination.

The plaintiffs also argue that the five-percent requirement is arbitrary and therefore does not meet the reasonableness prong of the standard for nonpublic forums. APT states that the five-percent threshold was determined by the Alabama Debates Partnership at the recommendation of one of its producers, who attended a workshop on "Producing Debates and How to Survive Them," which was sponsored by Best Practices Journalism. At this workshop, the producer learned that five-percent was the percentage used by a "large portion of U.S. public television stations sponsoring election debates" as the minimal level of public interest that justified participation by the candidate in the debate.[7]  There is no evidence that this number is unreasonable. Further, the fact that many other public television stations use this five-percent preference threshold evidences that a candidate with support below this threshold demonstrates an "objective lack of [public] support," *Forbes*, 523 U.S. at 682, 118 S.Ct. at 1644, and is a reasonable basis for excluding a candidate.[8]

The plaintiffs argue that the five-percent requirement could easily be set to a different number, such as one percent, that would allow Sophocleus to participate, and is therefore arbitrary and unreasonable. They also contend that, because Riley and Siegelman are close in the polls, the two-percent voter preference that Sophocleus commands is crucial in the election and therefore, excluding him from the debate is unreasonable. Finally, the plaintiffs argue the polls used to determine whether Sophocleus had five-percent of voter preference were chosen in arbitrary manner. The court rejects each of these arguments and finds the five-percent requirement reasonable in light of APT's purpose.

First, the plaintiffs' argument that five-percent is unreasonable because a different percentage could have been chosen is without merit. As the Supreme Court held in *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, the "decision to restrict access to a nonpublic forum need only be *reasonable;* it need not be the most reasonable or the only reasonable limitation." 473 U.S. 788, 808, 105 S.Ct. 3439, 3453, 87 L.Ed.2d 567 (1985) (emphasis in original). The court finds that the five-percent threshold is a reasonable decision by APT, and that APT is not constitutionally required to set this threshold any lower.

The plaintiffs' second argument, which is that the potential impact of Sophocleus in this close election demonstrates that the five-percent requirement is unreasonable, is irrelevant to the determination of reasonableness. First, it is unclear whether the plaintiffs' argument that the two percent of voters who prefer Sophocleus are crucial in this election is factually correct, in light of the evidence that somewhere between 10 and 14 % of the voters are undecided. However, even assuming it is correct, as the defendants point out, it is

---

6.  Joint Stipulation of Facts ¶ 3.

7.  *Id.* at ¶¶ 14–16.

8.  Additionally, in *Buchanan v. FEC*, 112 F.Supp.2d 58 (D.D.C.2000), the district court upheld the Federal Election Commission's ruling that requiring a presidential candidate to demonstrate that he had a 15 % level of support in order to participate in a debate was reasonable and objective. Although *Buchanan* was not a first-amendment challenge and involved a national candidate, it is further evidence of the reasonableness of the five-percent threshold.

irrelevant. The Court in *Forbes* approved of the use of lack of public support to exclude a candidate from debates, and, in that case, the Republican candidate who won the seat that Forbes was running for collected only 50.22 % of the vote, while the Democrat received 47.20 % of the vote. As Justice Stevens pointed out in his dissent, the decision to exclude Forbes may have "determined the outcome of the election," *Forbes,* 523 U.S. at 685, 118 S.Ct. at 1645, but it was still upheld as reasonable by the Court.

Finally, the plaintiffs argue that the polls picked by the defendants to assess whether candidates had met the five-percent threshold were chosen in an arbitrary manner. The court finds no evidence that APT specified which polls could be used to demonstrate a candidate had met the five-percent requirement, as APT required only that the poll be "independent" and "conducted by a recognized polling organization." The plaintiffs do not offer any evidence that they submitted independent polls that showed Sophocleus with five-percent of the votes, and that the polls were rejected because they were not ones specified by APT. Instead, the plaintiffs offer evidence of online polling, which they admit is not independent, or controlled, and say it should be considered independent. This argument is without merit.

In sum, the court finds that this case is controlled by *Forbes* and *Chandler,* and the plaintiffs have failed to demonstrate any difference between the case at hand and those two cases. Furthermore, in light of the standard that both the plaintiffs and the defendants concede govern this case, the five-percent threshold is both viewpoint neutral and reasonable in light of APT's purpose, and is, therefore, constitutional.

Because the court finds that the plaintiffs have not shown a likelihood of success on the merits of their claim, it will not evaluate whether the plaintiffs have made the requisite showing on the other factors that are necessary for a preliminary injunction to issue.

An appropriate final judgment will be entered.

### JUDGMENT

In accordance with the memorandum opinion entered today, it is the ORDER, JUDGMENT, and DECREE of the court that the application for a preliminary injunction filed by plaintiffs Alabama Libertarian Party and John Sophocleus on September 20, 2002 (Doc. no. 1), is denied.

It is further ORDERED that costs are taxed against plaintiffs Alabama Libertarian Party and Sophocleus, for which execution may issue.