[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 9, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-14511

_____

D. C. Docket No. 00-01662 CV-ORL-31J

HARRY PALMER,
STAR'S EDGE, INC.,

Plaintiffs-Appellants,

versus

ELDON BRAUN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(April 9, 2002)**

Before TJOFLAT and COX, Circuit Judges, and HANCOCK[*], District Judge.

COX, Circuit Judge:

_____

[*]Honorable James H. Hancock, U.S. District Judge for the Northern District of Alabama, sitting by designation.

Harry Palmer, the owner of Star's Edge, Inc., and the creator of a self-help course called Avatar, sought a preliminary injunction against Eldon Braun, alleging that Braun's book, *The Source Course*, infringed Palmer's copyright in the Avatar Course materials. The district court denied the request for a preliminary injunction after determining that Palmer was unlikely to succeed on the merits of his claim. Because the district court did not abuse its discretion, we affirm.

## I. FACTS

### A. HARRY PALMER & THE AVATAR COURSE

Palmer is an educational psychologist. For many years, he was a member of the Church of Scientology and aided members of the Church in the exploration of their consciousness. Palmer left the Church in 1982 and, in 1986, embarked on a personal regimen of experimental research, seeking to explore the functioning of his own consciousness. Palmer's research led him to the conclusion that beliefs are the key to everything in the universe.

This insight, combined with Palmer's background in educational psychology, led Palmer to develop an educational course in which students might explore their own consciousness. He calls his course Avatar, from a word for incarnated deities, and it is premised on the idea that a person's beliefs create his reality. The Avatar

Course seeks to inform its students of the existence of these beliefs and to teach them how to create or "discreate" those beliefs as necessary.

The Avatar Course is taught by trained and licensed "Masters" in three sections. Section I is a two-day seminar that introduces the Avatar Course using *Resurfacing: Techniques for Exploring Consciousness*, a 264-page manual that describes the basis of exploring the consciousness. *Resurfacing* is available to the general public.

After completing Section I, students are encouraged to take Sections II and III. Section II uses *The Exercises*, a 39-page manual that teaches students to reconnect with their existence and experience the world directly. The key exercises in Section II rely on a collection of short sentences designed to allow a student to control his beliefs. Once a student gains control of his beliefs, he moves on to Section III, *The Procedures*. In this section, students learn, through meditation, to become "source," or "the seat of consciousness at the center of the universe, creating everything outside through conscious intent." (R.2-60-Ex. 11 at 5.) When a person is "at source," he has achieved the enlightenment that the Avatar Course offers and is in control of his reality. Section III is taught with a 77-page manual.

The manuals used in Section II and III are kept confidential. Students must sign a confidentiality agreement prior to taking the course and must return the materials when the course ends. Confidentiality ensures both that the course is administered

with the help of a trained Master and that these sections, which cost $500 and $1500 respectively to attend, maintain their commercial value.

Once Sections II and III are completed, students may take additional sections to elevate themselves in the Avatar hierarchy. Section IV teaches students to become Masters, so that they may teach the course to others. Section V is the Wizards Course, which endows its graduates with the ability to transform civilization.

## B.  ELDON BRAUN & *THE SOURCE COURSE*

Braun began the Avatar Course in 1987, after hearing Palmer lecture about it. Also a former Scientologist, Braun believed that Palmer's course would teach him what Scientology did not. He signed up with Palmer, took the Avatar Course, and became an Avatar Master in 1989. As part of his mastery, he signed a license agreement and a confidentiality agreement. The confidentiality agreement required Braun to keep the Avatar Course materials secret and to return the materials upon request. In 1991, Braun had a disagreement with Palmer over the payment of royalties. As a result, Braun's license was suspended, and Star's Edge asked Braun to return his Avatar Course materials. Braun did not return the materials.

After his break with Palmer, Braun continued to believe in the power of Avatar but disliked Palmer's control of it. With these dual motivations, Braun undertook a campaign to discredit Palmer and undermine his control of Avatar. As part of his

effort, Braun published an article on the internet entitled "The Wiz of Orlando."[1] This article relates both Braun's involvement with Avatar and Palmer's control over the organization. To supplement his journalistic efforts, Braun also sought to develop an alternative course of self-discovery that would reveal the secrets of the Avatar Course and draw potential customers away from Palmer.

Braun's alternative course is called *The Source Course*. The title is drawn from the Avatar Course's ambition of leaving its graduates "at source." *The Source Course* approaches consciousness the same way that the Avatar Course does, and Braun billed it alternatively as "an analog of the Avatar Course" (R.2-60-Ex.15 at 1), "a refresher" for the Avatar Course (R.2-60-Ex. 28), "a take-home manual" for graduates of the Avatar Course (R.2-60-Ex. 21 at 1), and the "equivalent" of the Avatar Course materials (R.4 at 73). Unlike the Avatar Course materials, whose secrecy is jealously guarded, *The Source Course* is intended to be available to the general public, and Braun even offered it for free to those who could not afford it.

Braun began offering *The Source Course* to the public on November 9, 2000. On November 20, Palmer and Star's Edge sent Braun a letter claiming that *The Source Course* infringed their copyright in the Avatar Course materials and demanding that

---

[1]This article is available at http://www.scientology-kills.org/avatarpg1.htm or http://www.scientology-kills.org/The_Bastard_Child/the_bastard_child.htm.

Braun cease and desist the infringement. Braun refused, and Palmer and Star's Edge filed suit.[2]

Though it filed suit in December 2000, Palmer and Star's Edge did not move for a preliminary injunction until March 9, 2001. They asked for a preliminary injunction on the basis of their claims for libel, unfair competition, and trademark and copyright infringement. Because of scheduling conflicts, the district court did not hold a hearing on the motion until June 28, 2001.

At the hearing, Palmer and Star's Edge argued for the injunction only on the basis of their unfair competition claim and their copyright and trademark infringement claims. The district court denied the request for a preliminary injunction on the copyright-infringement claim. It found that *The Source Course* was not substantially similar to the Avatar Course materials and that Palmer was thus unlikely to succeed on his copyright-infringement claim. On appeal, Palmer and Star's Edge ask us to review this ruling on the copyright-infringement claim. We enjoined publication of *The Source Course* pending this appeal.

## II. ISSUE ON APPEAL & STANDARD OF REVIEW

_____

[2]Palmer and Star's Edge assert eight claims for relief, including copyright infringement, infringement of the Avatar trademark, false representation, false designation of origin, and unfair competition under the Lanham Act, breach of a contractual covenant not to disclose, misappropriation of confidential information, interference with a business relationship, libel per se, and libel per quod.

The only issue on this appeal is whether the district court erred by failing to preliminarily enjoin Braun's publication of *The Source Course*. The grant or denial of a preliminary injunction is within the sound discretion of the district court and will not be disturbed absent a clear abuse of discretion. *See Siegel v. Lepore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (en banc); *Cafe 207, Inc. v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir. 1993); *Revette v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 740 F.2d 892, 893 (11th Cir. 1984).

### III. DISCUSSION

Palmer is not entitled to a preliminary injunction unless he establishes each of the following four prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the potential harm to the defendant; and (4) that the injunction will not disserve the public interest. *See Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001). The district court found that Palmer did not establish a substantial likelihood of success on the merits of his copyright claim and, without considering the remaining prerequisites, denied the request for a preliminary injunction. Palmer contends that he did, in fact, show a substantial likelihood of success on his copyright-infringement claim.

### A. PRIMA-FACIE COPYRIGHT INFRINGEMENT

To establish a prima-facie case of copyright infringement, Palmer must show (1) that he owns a valid copyright in the Avatar Course materials and (2) that Braun copied original elements of the Avatar Course materials in *The Source Course*. *See Suntrust Bank*, 268 F.3d at 1265-66. Palmer submitted copyright registration certificates to the district court, and Braun does not dispute the validity of Palmer's copyright. Palmer, then, owns a valid copyright, satisfying step one.

To satisfy step two, Palmer must first show that *The Source Course* is "substantially similar" to the Avatar Course. Two works are substantially similar if "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Leigh v. Warner Bros.*, 212 F.3d 1210, 1214 (11th Cir. 2000) (quoting *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir. 1982)). Both literal and nonliteral similarities can warrant a finding of substantial similarity. *See Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1543-44 n.25 (11th Cir. 1996).

Literal similarity is the verbatim copying of a copyrighted work. In many cases, an allegedly infringing work will evince "fragmented literal similarity." *See generally* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.03[A][2] (2001). In other words, the work may copy only a small part of the copyrighted work but do

so word-for-word. If this fragmented copy is important to the copyrighted work, and of sufficient quantity, then it may support a finding of substantial similarity.

Nonliteral similarity is more difficult to define. A work may be deemed substantially similar to another work when it evinces what Nimmer calls "comprehensive nonliteral similarity." *See generally* 4 Nimmer & Nimmer, *supra,* § 13.03[A][1]; *Bateman*, 79 F.3d at 1543 n.25. This comprehensive nonliteral similarity is evident where "the fundamental essence or structure of one work is duplicated in another." 4 Nimmer & Nimmer, *supra*, § 13.03[A][1], at 13-29.

Even if Palmer successfully shows substantial similarity, he must also demonstrate that *The Source Course* borrowed "original elements" of the Avatar Course materials. "Original elements" include only original expression, since copyright protection does not extend to ideas, procedures, processes, or systems, regardless of their originality. *See* 17 U.S.C. § 102(b) (1996); *Suntrust Bank*, 268 F.3d at 1266; *Leigh*, 212 F.3d at 1214. Even original expression will be unprotected if it can be accurately characterized as an idea, procedure, process, or system. *See Warren Publ'g, Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1514 n.13 (11th Cir. 1997) (en banc). But, in many cases, the line between idea and expression is difficult to draw: "Decisions must therefore inevitably be *ad hoc*." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960). Moreover, in certain cases,

9

there are so few ways of expressing an idea that the idea and its expression merge. Under the so-called "merger doctrine," these few expressions do not receive copyright protection, since protection of the expressions would thus extend protection to the idea itself. *See Warren Publ'g*, 115 F.3d at 1518 n.27.

Palmer contends that *The Source Course* is substantially similar to the Avatar Course and that the district court's contrary determination was in error. Braun argues that, for the most part, he copied only Palmer's ideas and exercises, not his expression. He also asserts that, in the few instances where he did copy Palmer's expression, the simple phrases he copied are covered by the merger doctrine. Therefore, according to Braun, while the works may be substantially similar, Palmer's copyright did not protect the portions of the Avatar Course materials that Braun copied. We consider each contention in turn.

B. THE AVATAR COURSE MATERIALS & *THE SOURCE COURSE*

A comparison of the works involved in this case shows that *The Source Course* is not an exact replica of the Avatar Course materials. But, at the preliminary injunction hearing, Palmer presented a chart to the court indicating obvious similarities between the works. We must evaluate these similarities to determine whether an average lay observer would recognize that *The Source Course* was appropriated from the Avatar Course materials.

10

The animating idea behind the Avatar Course is that people's beliefs can alter how they experience and understand their lives. This idea is not new; as the district court pointed out, it has been "pondered, discussed, expounded upon, and written about since time immemorial." (R.3-68 at 15.) Even if the idea were new, it could not, of course, be protected by copyright. So, while it is clear that *The Source Course* is motivated by Palmer's idea, the question is whether *The Source Course* expresses this idea in a way that infringes on original expression of the same idea in the Avatar Course materials.

The Avatar Course transforms the idea into a series of exercises that allow a person, not only to understand the idea intellectually, but to make practical use of the idea. The structure of the Avatar Course, and the exercises associated with it, are repeated, with only slight variations, in *The Source Course*.

*1. Section II*

Section II of the Avatar Course teaches students "to reconnect with an experiential awareness of your own existence" through a series of exercises. (R.4-Ex. 35 at ii.) In the final exercises of this section, students are taught to "assume control" of their beliefs. (R.4-Ex. 35 at 32 & 35.) Students begin the exercise by stating out loud a short phrase from one of two lists in the materials, thirty-one phrases in all. They are instructed to recognize any associations that arise in their minds as they say

11

the phrase. For instance, a student might say, from the list, "I have everything I need," and then recognize exceptions that pop into his head, such as "except for a new pair of shoes." The student is then taught to repeat, exaggerate, and eliminate this association. A student demonstrates control, and thus completes the exercise, when he can say all of the phrases on the two lists without any associations. The student is then invited to create his own phrases and eliminate any associations he may have with them.

*The Source Course*, whose Section II is entitled "Experiencing Reality," closes with a similar exercise. (R.4-Ex. 37 at 33.) A student is told to state out loud a short phrase from one of three lists, thirty-four phrases in all. If any associations arise, the student is told to repeat, exaggerate, and eliminate them. The exercise is complete when the student can say all of the phrases on the list without associations. Once he has completed the exercise, the student is invited to create his own phrases.

These exercises are themselves similar, but the most damning similarity is evident from a comparison of the suggested phrases. In his list, Braun uses many of the phrases that Palmer uses:

| *The Avatar Course* | *The Source Course* |
|---|---|
| I am happy to be me. | I'm happy being who I am. |
| I am right here. | I am right here. |
| I am me. | I am just me. |
| I am source. | I'm the source of it all. |
| I don't know where I am. | I don't know where I am. |
| I feel like a victim. | I feel like a victim. |
| I am not a victim. | I am not a victim. |
| The past doesn't exist. | My past doesn't exist. |
| Everything I see is illusion. | Everything I see is illusion. |
| What I see is real. | Everything I see is real. |
| I create what I experience. | I own what I experience. |
| I have everything I need. | I have what I need. |
| My mind is still. | My mind is quiet. |
| I am relaxed. | I am relaxed. |
| I create it all. | I create everything. |
| (R.4-Ex. 35 at 34 & 37.) | (R.4-Ex. 37 at 34.) |

Out of the thirty-plus phrases chosen for each of these exercises, fifteen of the phrases are identical or almost identical.

13

## 2. *Section III*

Both works exhibit similarity in their third sections as well. Section III of the Avatar Course teaches students "a simple and effective technique for managing beliefs" called the "Creation Handling Procedure" ("CHP"). (R.4-Ex. 36 at ii.) The CHP allows students to dissolve unwanted thought forms in six easy steps. Section III of *The Source Course*, entitled "Changing Your Own Reality," teaches the "Thought Dissolving Process" ("TDP"). (R.4-Ex. 37 at 37-51.) While the TDP takes a lengthy eight steps to achieve the same results, the process is the same and is described in similar words. For instance, step one in the Creation Handling Procedure asks students to "[i]dentify with and experience" the thought form by "merg[ing] with [it] and feel[ing] how it feels." (R.4-Ex. 36 at 4.) In the Thought Dissolving Process, step one asks students to "[g]rok" the thought form. (R.4-Ex. 37 at 42.) "Grok" is a verb drawn from Robert Heinlich's *Stranger in a Strange Land* and is defined in the Oxford English Dictionary as "[t]o understand intuitively or by empathy, to establish rapport with." 6 *Oxford English Dictionary* 864 (2d ed. 1989).

The remaining steps in these processes are also explained in similar language. Step two in CHP asks students to "[d]efine the outermost limits" of the thought form (R.4-Ex. 36 at 4); TDP instructs students to "[e]xpand to its outer edges" (R.4-Ex. 37 at 42). CHP's step three is "[l]abel it without judgment" (R.4-Ex. 36 at 5); TDP's is

14

"[o]bserve it without filters" (R.4-Ex. 37 at 43). In step four of CHP, students are told to "[d]isassociate from the creation" by saying, "This is not-I. This is my creation." (R.4-Ex. 36 at 6); TDP student's are told in step four to "[s]ay to yourself, 'This isn't me. It's something I created.'" (R.4-Ex. 37 at 43). Step five of CHP tells students to "[d]iscreate the creation" by halting "an existing flow of energy" as one would "turn off a light at the switch" (R.4-Ex. 36 at 6); step five of TDP tells students to "[d]ecide to drop it, or let it dissolve" by "switch[ing] off its energizing force" (R.4-Ex. 37 at 43). CHP, in step six, asks students to "[c]reate what you prefer" and use CHP to eliminate any unwanted associations in the new creation. (R.4-Ex. 36 at 6.) TDP tells students, in step seven, to "[d]ecide what, if anything, to put in its place" and, in step eight, to "[s]ee if any 'Yeah, buts' arise." (R.4-Ex. 37 at 43.) If "Yeah, buts," or unwanted associations, do arise, TDP instructs students to "use the TDP on them individually" (R.4-Ex. 37 at 43).

While both works suggest that this procedure may be used on any and all beliefs, they both instruct students to focus the procedure on similar beliefs. Section III of the Avatar Course materials first directs students to focus on thoughts about their bodies. It then focuses on beliefs about limitations, identities, and persistent beliefs. For really persistent beliefs, the CHP teaches students to acknowledge that

15

"It's all right to feel like this." (R.4-Ex. 36 at 66.)  Finally, students are directed toward an understanding of the "collective consciousness" (R.4-Ex. 36 at 67-69).

*The Source Course* takes its students on a similar journey.  It focuses the TDP on the body, then on identities, then on doubts, and finally on persistent beliefs.  When confronted with really persistent beliefs, students are told to affirm that "It's OK to feel the way I do." (R.4-Ex. 37 at 50.) *The Source Course* then suggests that the TDP be used on others' consciousness.

And the similarities do not end there.  Throughout *The Source Course*, Braun discusses Palmer's ideas and exercises in similar terms.  Where Palmer calls identities "suits of clothes" (R.4-Ex. 4 at 116), Braun calls them "disguises" (R.4-Ex. 37 at 15).  When Palmer asks students to "[s]elect a quiet, comfortable space" for meditation on body image (R.4-Ex. 36 at 30), Braun directs them to "[j]ust lie down comfortably in a pleasant place where you won't be interrupted" (R.4-Ex. 37 at 45).  Palmer calls persistent beliefs "core creations" (R.4-Ex. 36 at 60); Braun calls them "core issues" (R.4-Ex. 37 at 50).

## C.  COPYRIGHT INFRINGEMENT?

Contrary to the district court's finding, there are substantial similarities between the Avatar Course and *The Source Course*, both literal and nonliteral.  But similarity

16

is not enough. Palmer must also show that these similarities infringed upon his copyrightable expression.

The first type of identifiable similarity is of the nonliteral variety. Braun organizes *The Source Course* in three sections. In Section I, he introduces the same idea of consciousness that Palmer introduces in Section I of the Avatar Course. He then, in Section II, translates this idea into exercises, and the exercises Braun chooses are the same exercises that Palmer describes in Section II of the Avatar Course. Once the student achieves the proper results, the same results that Palmer's students achieve, Braun then moves them along to Section III. In Section III, Braun's students learn a meditation technique that is identical to the meditation technique described in Section III of the Avatar Course. To describe the meditation process, Braun uses labels and descriptions that are similar to Palmer's labels and descriptions. Once this technique is mastered, Braun instructs his students to focus the technique on areas of their life that are identical to the areas that Palmer suggests to his students.

Braun's exercises are virtually identical to Palmer's exercises, and a layman might conclude that *The Source Course* was appropriated from the Avatar Course. However, Braun's appropriation is actionable only if he copied Palmer's expression, not his ideas, procedures, processes, and systems. *See* 17 U.S.C. § 102(b) (1996). Palmer's exercises, while undoubtedly the product of much time and effort, are, at

bottom, simply a process for achieving increased consciousness. Such processes, even if original, cannot be protected by copyright.

But Palmer's expression *is* protected by copyright. On occasion, Braun's descriptions of the exercises come dangerously close to Palmer's descriptions of the exercises. These descriptions might be accurately characterized as processes, but they might not, and Palmer may ultimately show that, by paraphrasing these descriptions, Braun infringed on protected expression. In this case, as in many copyright cases, the line between process and expression is not easily drawn, and this difficult issue must be resolved on the totality of the facts.

The examples of literal similarity also present some thorny issues. Braun copied fifteen sentences from the Avatar Course materials. The district court found that these fifteen sentences represent de minimis infringement. But, while fifteen sentences is only a fraction of the number of sentences in Braun's 53-page work, these sentences must be viewed in context. Braun uses these sentences as part of the same exercise for which Palmer uses them. *The Source Course* introduces this exercise in the same part of the course as the Avatar Course. In both courses, students learn, by concentrating on these particular sentences, how to control their beliefs. The completion of this exercise allows students to move on to the meditation exercise in Section III, which, in both courses, is the penultimate exercise before enlightenment.

18

Braun does not inadvertently sprinkle his work with Palmer's sentences; instead, he uses the same sentences in the same exercise as Palmer and intends to achieve the same results with them. This use is not de minimis.

However, Braun argues that these sentences are so simple in structure and content that they are covered by the merger doctrine. On their face, these sentences, taken individually, seem to be of the type embraced by the merger doctrine. But we must bear in mind that these phrases are part of an exercise whose ostensible purpose is to teach mental control. The purpose of the exercise might be served by any phrases, regardless of their content. In such a case, Palmer's selection of certain sentences may be protected by copyright, even though the sentences themselves are covered by the merger doctrine.[3] While the district court did not discuss the merger issue, we believe that it raises difficult questions that must be addressed.

While the district court erred by finding that *The Source Course* is not similar to the Avatar Course, this case presents other difficult questions, regarding the idea-expression dichotomy and the merger doctrine, that may ultimately prevent Palmer from succeeding on his copyright-infringement claim. We express no opinion on how

---

[3]For instance, there may be only one way to express the idea of a particular color or number of fish. But when those ideas are arranged in a particular order—such as "one fish, two fish, red fish, blue fish"—the expression is no longer covered by the merger doctrine.

19

these issues will finally be resolved. *See Cafe 207, Inc. v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir. 1993). We hold only that the district court did not abuse its discretion by denying a preliminary injunction on the basis that Palmer did not show a substantial likelihood of success on the merits of his claim.

## IV.  CONCLUSION

The district court did not abuse its discretion by concluding that Palmer was unlikely to succeed on the merits of his copyright-infringement claim. Therefore, the district court's denial of Palmer's request for a preliminary injunction is affirmed.

AFFIRMED.[4]

---

[4]We issued an injunction pending appeal. That injunction will be lifted when the mandate issues in this case.