[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 17, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14219
Non-Argument Calendar

_____

D. C. Docket No. 06-01447-CV-H-S

GWENDOLYN ERVIN,

Plaintiff-Appellant,

versus

HOUSING AUTHORITY OF THE BIRMINGHAM DISTRICT,
RALPH D. RUGGS, in his official capacity as Executive
Director of Housing Authority Birmingham District,
LINDA CARROLL, in her official capacity as
Section 8 Housing Authority Birmingham District,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(June 17, 2008)**

Before BIRCH, DUBINA and MARCUS, Circuit Judges.

PER CURIAM:

Gwendolyn Ervin appeals the district court's entry of summary judgment in favor of the Housing Authority of the Birmingham District ("Housing Authority"); Ralph Ruggs, the Director of the Housing Authority; and Linda Carroll, the Section 8 Coordinator of the Housing Authority. Ervin brought suit after the Housing Authority terminated her federal rental benefits, which she had been receiving pursuant to Section 8 of the National Housing Act of 1937, as amended by the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f ("Housing Act"). Ervin sought declaratory and injunctive relief, pursuant to 42 U.S.C. § 1983, alleging that the Housing Authority had violated her procedural due process rights under the Fourteenth Amendment when it failed to comply with Department of Housing and Urban Development ("HUD") regulations governing benefits termination procedures. On appeal, Ervin argues: (1) that the district court erred by entering summary judgment because she received insufficient notice of the termination of her benefits, and (2) that her hearing before the Housing Authority did not comply with the administrative regulations applicable to Section 8 proceedings. After careful review, we vacate and remand for the district court's further

2

consideration, in light of our intervening decision in <u>Basco v. Machin</u>, 514 F.3d 1177 (11th Cir. 2008).

We review the district court's order granting summary judgment <u>de novo</u>. <u>See Madray v. Publix Supermarkets, Inc.</u>, 208 F.3d 1290, 1296 (11th Cir. 2000). A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 587 (1986) (quoting <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968)).

The summary judgment record in this case is not voluminous. In support of its motion for summary judgment, the Housing Authority submitted, among other things, the affidavit of Defendant Carroll, who conducted the administrative hearing on Ervin's benefits. In her affidavit, Carroll described the testimony she considered prior to entering an order terminating Ervin's benefits. The Housing Authority also submitted Ervin's affidavit. In opposition to summary judgment, Ervin submitted her own deposition.

According to Carroll's affidavit, she conducted an informal administrative hearing on Ervin's rental benefits on November 30, 2005. Carroll described the evidence she considered at the hearing as follows:

• Ervin was a participant in the Housing Authority's Section 8 Rental Assistance Program ("Program"), which receives federal housing subsidies from the HUD, pursuant to an "annual contributing contract" and the implementing regulations for Section 8 programs, 24 C.F.R. §§ 982.1 et seq.

• Helen Hyde, the Housing Authority's Assistant Manager of Leased and Section 8 Housing, testified at the administrative hearing about a letter, dated August 28, 2005, from Captain Mike Fisher of the Birmingham Police Department. Fisher sent the letter to Ervin's landlord, Levie Satisfield III, informing him that a search warrant had been served on his property on August 25, 2005, and that during the search, illegal narcotics were found on the property. Satisfield forwarded Captain Fisher's letter to the Housing Authority.[1]

• On September 14, 2005, the Housing Authority sent Ervin a letter informing her that her Section 8 benefits would terminate on October 31, 2005, based on her failure to comply with 24 C.F.R. § 982.533(a)(1), which provides for termination of housing assistance if the leased property is used for drug-related criminal activity. The letter was attached as an exhibit to Carroll's affidavit. In a section entitled "Factual Basis for Determination," the letter stated "use of property for illegal drug sales and/or purchase." The letter also advised Ervin of her right to request an informal hearing.

• Rachel King, a Recertification Specialist in the Section 8 Department of the Housing Authority, made the initial decision to terminate

---

[1] In her affidavit, Carroll described the contents of Fisher's letter, although the letter itself was not included in the Housing Authority's summary judgment materials.

4

assistance to Ervin. On September 20, 2005, King received a written request from Ervin for a hearing on the termination decision. On November 30, 2005, an informal hearing took place before Carroll.

• Belinda Carwell, one of Ervin's neighbors, testified that on August 25, 2005, she saw police officers pick up "reefer" in the front yard of Ervin's home and that "there was a girl there."

• In addition to the foregoing testimony, the Housing Authority's lawyer reported to Carroll that she had spoken to the Birmingham Police Department and learned that two detectives had gone to Ervin's residence on August 25, 2005. The first detective went to the unit at approximately 9:00 A.M. and made a narcotics arrest of a female in possession of powder cocaine and marijuana. A second detective executed a search warrant later in the day and seized three marijuana plants.

• Ervin testified that no police officers had entered her apartment when she was home, and that she had not seen a search warrant for the premises. In response to Carroll's questioning about the other girl (described by neighbor Carwell), Ervin said that "Sharon Rush" had been arrested at her apartment. Notably, Ervin argued that Rush had come to a previously scheduled hearing, which had been cancelled, but could not attend the second hearing.

Following the hearing, Defendant Carroll filed a written report upholding the termination of Ervin's housing benefits. She made the following factual findings:

The owner of the unit for which Ms. Ervin receives Section 8 rental assistance was notified in writing by the Birmingham Police Department that a search warrant was executed at the unit and "illegal narcotics were found." The owner provided the Housing Authority of the Birmingham District Section 8 Office with a copy of the notice. The HABD attorney . . . confirmed that a narcotic arrest was made at the unit on August 25, 2005 resulting in the seizure of marijuana plants with a street value of

5

approximately $6,000.00.  No evidence was presented at the time of the hearing to the contrary.

Carroll determined that a preponderance of the evidence established that Ervin had violated one of the requirements of her Section 8 rental assistance by allowing her unit to be used for drug-related criminal activity.  On appeal, the district court affirmed.  This appeal followed.

First, Ervin argues that she received insufficient notice for termination of her housing benefits.  The applicable regulation provides that a termination notice must "(1) Contain a brief statement of reasons for the decision [to terminate assistance]; (2) State that if the family does not agree with the decision, the family may request an informal hearing on the decision; and (3) State the deadline for the family to request an informal hearing."  See 24 C.F.R. § 982.555(c)(2).  It is undisputed that the last two requirements were satisfied here.  Ervin contends that the information contained in the notice was insufficient to constitute a "brief statement of reasons for the decision to terminate assistance," within the meaning of § 982.555(c)(2).

We have interpreted the "statement of reasons" for the termination of Section 8 benefits as follows:  "Such a statement must be sufficiently specific for it to enable an applicant to prepare rebuttal evidence to introduce at his hearing appearance."

Billington v. Underwood, 613 F.2d 91, 94 (5th Cir. 1980).[2] Again, the Housing Authority's notice provided that Ervin's Section 8 rental assistance "will terminate . . . due to failure to comply with Section 8 regulations." The notice then goes on to inform Ervin that the regulation violated was "Crime by Family Members . . . Drug-related activity" and that the factual basis for the determination was "use of illegal drug sales and/or purchase." This language sufficiently stated the reasons for the termination of Ervin's benefits. As the district court observed, "[t]hat the notice did not specify the individual alleged to commit the illegal activity, nor the exact time does not make it deficient."

Indeed, the district court found Ervin's lack-of-notice argument altogether disingenuous, given her own testimony at the hearing that Sharon Rush, the woman arrested at her apartment on August 25, 2005, had accompanied her to a previously scheduled hearing which had been cancelled, but was unable to attend the second hearing. From Ervin's testimony, the district court found that she was well aware of the incident providing the factual basis for the termination notice. Indeed, Ervin presented no evidence to the contrary. On this record, the notice was sufficiently

---

[2]In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted, as binding precedent in the Eleventh Circuit, all decisions of the former Fifth Circuit announced prior to the close of business on October 1, 1981.

specific to enable Ervin to prepare rebuttal evidence to introduce at the hearing and the district court did not err by rejecting this claim.

Turning to Ervin's second argument, she asserts that the Housing Authority violated the HUD regulations by failing to provide her with an adequate hearing. More specifically, she claims the hearing violated her due process rights because the hearing officer relied solely on hearsay without adequate indicia of reliability and improperly shifted the burden of proof to her, rather than the Housing Authority.[3] We recently held that at an informal administrative proceeding held under the HUD regulations to determine whether a participant's housing assistance should be terminated, a local housing authority "has the burden of persuasion and must initially present sufficient evidence to establish a prima facie case." Basco, 514 F.3d at 1182. In Basco, we concluded that the local housing authority had not met its burden of persuasion by submitting two unauthenticated copies of two police reports, both of which consisted of hearsay. Id. "Although the rules of evidence are not strictly applied in administrative hearings, there are due process limits on the extent to which

---

[3]We are unpersuaded by Ervin's argument that Defendant Carroll was not an impartial decisionmaker. The pertinent regulation provides that the informal hearing "may be conducted by a person or persons designated by the PHA, other than a person who made or approved the decision under review or a subordinate of this person." 24 C.F.R. § 982.555(a)(4)(i). It is undisputed that Carroll is a person designated by the Housing Authority to conduct such hearings, and that Rachel King, who made the decision under review at the hearing, is not a subordinate to Carroll, but instead reports to Helen Hyde.

an adverse administrative determination may be based on hearsay evidence." Id.; see also Williams v. U.S. Dep't of Transp., 781 F.2d 1573, 1578 n. 7 (11th Cir. 1986) ("Hearsay is admissible in administrative hearings and may constitute substantial evidence if found reliable and credible.").

Here, according to the summary judgment record, the Housing Authority's evidence at the administrative hearing consisted primarily of Helen Hyde's testimony, in which she described the contents of the letter from Captain Fisher stating that illegal narcotics had been found in Ervin's apartment on August 25, 2005. In her affidavit in support of summary judgment, Carroll says that she considered the letter itself at the hearing, but the letter was not part of the Housing Authority's summary judgment submission. Carroll also heard from Belinda Carwell, who testified about "a girl" and "reefer" found in the front yard of Ervin's building. In addition to the foregoing testimony, Carroll heard from the Housing Authority's lawyer, who described her conversations with the Birmingham Police Department concerning an arrest and search at Ervin's residence on August 25, 2005. The record on appeal does not contain an administrative record, nor any other material relating to the informal hearing.

In short, the evidence supporting the adverse administrative decision wholly consisted of hearsay. Although hearsay may constitute substantial evidence in

administrative proceedings, on the present record, we cannot say that the "factors that assure the underlying reliability and probative value of the evidence" necessarily are present. Id. (quotation marks and citation omitted).[4] Indeed, the only record evidence supporting the decision is Carroll's affidavit in support of summary judgment, in which she describes the hearing she conducted on Ervin's benefits. Put simply, the evidence capable of appellate review in the instant case has less reliability and probative value than the two unauthenticated police reports we considered in Basco. On this record, we must vacate and remand to the district court, for further consideration, in light of our decision in Basco. On remand, the district court should consider whether the "factors that assure the underlying reliability and probative value of the evidence" necessarily are present here.

**VACATED AND REMANDED.**

---

[4]In the context of an administrative proceeding, we judge the reliability and probative force of hearsay evidence by considering the following factors: "'whether (1) the out-of-court declarant was not biased and had no interest in the result of the case; (2) the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpoenaed the declarant; (3) the information was not inconsistent on its face; and (4) the information has been recognized by courts as inherently reliable.'" Basco, 514 F.3d at 1182 (quoting J.A.M. Builders, Inc. v. Herman, 233 F.3d 1350, 1354 (11th Cir. 2000) (citation omitted)).

10