**Dionne SANDERS, Plaintiff,**

v.

**Sylvia SELLERS–EARNEST, in her official capacity as Executive Director of the Housing Authority of the City of Plant City, Florida, et al., Defendants.**

**Case No. 8:10–CV–1174–T–27TGW.**

United States District Court, M.D. Florida, Tampa Division.

June 11, 2010.

---

C. Martin Lawyer, III, Linda Streeter Mann, Bay Area Legal Services, Inc., Tampa, FL, Nancey G. Penner, Bay Area Legal Services, Inc., Plant City, FL, for Plaintiff.

J. Miles Buchman, The Buchman Law Firm, Tampa, FL, for Defendants.

## ORDER

JAMES D. WHITTEMORE, District Judge.

**BEFORE THE COURT** is Plaintiffs Motion for a Preliminary Injunction (Dkt. 3), and Defendants' response in opposition (Dkt. 11). Plaintiff challenges the termination of her Section 8 housing assistance, provided pursuant to Section 8 of the Federal Housing Act of 1937, 42 U.S.C. § 1437f ("Section 8"), as amended, which is administered locally by the Housing Authority of the City of Plant City (the "Housing Authority"). Defendants, sued in their official capacities, are Sylvia Sellers–Earnest, the Housing Authority's Executive Director, and Omayra Vanderpool, Section 8 Coordinator. The Court has considered the parties' submissions and the arguments of counsel and finds that the motion should be GRANTED.

### Regulatory Background

U.S. Department of Housing and Urban Development ("HUD") regulations specify when a public housing agency ("PHA") may terminate a participant family's Section 8 housing assistance payments. *See* 24 C.F.R. § 982.552. A PHA may terminate assistance if a participant family "violates any family obligations." 24 C.F.R. § 982.552(c)(1)(i). A participant family is obligated (1) to seek PHA approval for the "composition of the assisted family residing in the unit" and (2) to "request PHA approval to add any other family member as an occupant of the unit." 24 C.F.R. § 982.551(h)(2).

Tenants confronted with adverse action by a PHA are entitled to specific grievance procedures. *See* 42 U.S.C. § 1437d(k). HUD regulations outline the procedures that a PHA must follow before terminating a family's Section 8 housing assistance. *See* 24 C.F.R. § 982.555.[1] A PHA must provide a participant family an opportunity for an informal pretermination hearing if the proposed termination is "because of the family's action or failure to act." 24 C.F.R. § 982.555(a)(1)(v), (a)(2). Before an informal hearing, a family "must be given the opportunity to examine . . . any PHA documents that are directly relevant to the hearing." 24 C.F.R. § 982.555(e)(2)(i). At the hearing, "[t]he family must be given the opportunity to present evidence, and may question any witnesses. Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings." 24 C.F.R. § 982.555(e)(5). "Factual determinations . . . shall be based on a preponderance of the evidence presented at the hearing." 24 C.F.R. § 982.555(e)(6).

### Factual Background

Plaintiff received a letter (Dkt. 1–2 at 1) dated February 18, 2010 stating that (1) the Housing Authority had received information that Kenneth Davis was residing in her unit; (2) Davis had also used her address on an arrest record on February 15, 2010 that the Housing Authority obtained from the Hillsborough County Sheriff's Office; (3) Davis was an unauthorized lodger in Plaintiff's unit; and (4) Plaintiff's housing assistance would therefore be terminated effective March 31, 2010. As the formal reasons for termination, the letter stated that in violation of obligations Plaintiff agreed to in her HUD Form 52646, Plaintiff had (a) used the unit for a purpose other than residence by her family and (b) failed to obtain written approval from the Housing Authority to add another family member as an occupant of the unit.

A hearing was held on April 2, 2010 before hearing officer Marlene Baskin. The hearing was not recorded. The Housing Authority presented the following documentary evidence concerning Davis: (a) a Criminal Report Affidavit/Notice to Appear issued by the Hillsborough County Clerk of Courts dated February 15, 2010 (the "notice to appear"); (b) an Incident Report from the Plant City Police Department dated February 15, 2010 (the "incident report"); and (c) a Hillsborough County Sheriffs Office Arrest Inquiry (the "arrest form") dated February 15, 2010 (collectively, the "police reports").[2]

---

**1.** The Eleventh Circuit has suggested but not expressly held that, independent of the requirements of constitutional due process, the procedural rights set forth in 24 C.F.R. § 982.555 are enforceable under 42 U.S.C. § 1983. *See Basco v. Machin*, 514 F.3d 1177, 1180, 1181–82 (11th Cir.2008) (holding in favor of participant in action "alleging deprivations of [plaintiffs'] right to procedural due process under 24 C.F.R. § 982.555(e)(5) and (6), and 42 U.S.C. § 1983" and stating that Section 982.555 "establish[es] the substantive rights at issue"); *see also Gammons v. Massachusetts Dept. of Hous. and Comty. Dev.*, 523 F.Supp.2d 76, 84 (D.Mass.2007); *Fields v. Omaha Hous. Auth.*, No. 8:04CV554, 2006 WL 176629, *2 (D.Neb. Jan. 23, 2006). *But*

*cf. Colvin v. Housing Auth. of City of Sarasota, Fla.*, 71 F.3d 864, 865 n. 1 (11th Cir.1996); *Harris v. James*, 127 F.3d 993, 1009 (11th Cir.1997) (where a regulation's enforcing statute confers no federal right, the regulation alone cannot create a right enforceable under Section 1983).

**2.** *See* Dkt. Dkt. 1–2 at 18; May 21, 2010 affidavit of Dionne Sanders ("Pl. Aff." [Dkt. 3–1] ¶ 14); *see also* June 1, 2010 affidavit of Sylvia Sellers–Earnest ("Sellers–Earnest Aff." [Dkt. 12] ) ¶ 8(c) (stating that, apart from several characterizations of facts or legal conclusions. Plaintiffs affidavit is accurate.).

Plaintiff testified at the hearing that Davis had never resided with her at the assisted unit, and that as long as she has known Davis, his actual, exclusive residence has been the home of his mother on Baker Street in Plant City (the "Baker Street address"). Plaintiff testified that Davis' mother, Alfredia Davis, told Plaintiff that the reason she contacted the Housing Authority to inform it that her son was living with Plaintiff was that "she was angry with [Plaintiff] and blamed [Plaintiff] for having her son arrested on February 15, 2010." Pl. Aff. ¶ 17(a)-(c). When asked why she brought no witnesses to the hearing, Plaintiff stated that she assumed none would be necessary because she believed no proof could be offered that Davis lived with her. *Id.* ¶ 17(e).

Plaintiff submitted the following documents during the hearing: (1) a verified Petition for Injunction for Protection Against Dating Violence pursuant to Section 784.046, Florida Statutes (the "Petition" [Dkt. 3–1 at 14–19] ), filed by Plaintiff in Hillsborough County Circuit Court on February 17, 2010; (2) a Temporary Injunction Against Dating Violence (Dkt. 3–1 at 10–13) issued by that court on the same date enjoining Kenneth Davis, from, *inter alia,* coming within 500 feet of Plaintiff or her residence; (3) an Amended Temporary Injunction Against Dating Violence (Dkt. 3–1 at 6–9) issued on March 1, 2010; and (4) Plaintiff's undated affidavit (Dkt. 3–1 at 20–21) relating to the same incident she subsequently prepared for Davis's criminal defense attorney. *See also* Pl. Aff. ¶ 17(f).

In the Petition, Plaintiff described her relationship with Davis as: "we've been together s[i]nce November 2008 sexual and staying together at hot[e]ls and his mom and sometime[s] my houses." (Dkt. 3–1 at 15). The Petition relates an incident on February 15, 2010 at Plaintiff's home when Davis pushed her to the floor, threatened

to kill her, and grabbed her when she attempted to flee, causing her to fall to the floor. *Id.* at 17–18. The Petition lists Davis's current address as his mother's Baker Street address. *Id.* at 14. Plaintiff's second, undated affidavit gives a different account of the incident, averring that although Davis never intentionally struck her. *Id.* at 16–17.

The hearing officer's written decision upheld the decision to terminate Plaintiff's housing assistance. (Dkt. 3–1 at 22). After "taking into consideration all testimony, reviewing all documents submitted and completing other investigation," the hearing officer found that (1) the notice to appear "clearly stated that ... Davis acknowledged to the arresting officer that he and [Plaintiff] 'have been dating for one year and live together,' " *id.;* (2) the incident report "indicates that Mr. Davis and Ms. Sanders' relationship was 'co-habitants,' " *id.;* and (3) on the arrest form, "Davis acknowledged to the [HCSO] that his street address was ... [Plaintiffs] address," *id.* The decision upheld the termination "for the reason that [she] failed to obtain written approval to add Kenneth Davis as an occupant of the assisted unit in violation of her family obligations under the HCV [*i.e.,* Housing Choice Voucher] Program." *Id.*

 After the Housing Authority denied Plaintiffs requests to set aside the decision and for a new hearing, Plaintiff brought this action. Plaintiff does not challenge the notice she received or dispute that she was given an opportunity to present evidence at the informal hearing. Rather, Plaintiff contends that she was deprived of her procedural rights guaranteed by 24 C.F.R. 982.555(e)(5)-(6) and the Fourteenth Amendment's Due Process Clause because the hearing officer's finding that Davis resided in the assisted unit was based on unreliable hearsay, that is, the

two police reports.[3] Neither party has submitted the police reports.

### Standard

■ A preliminary injunction may be issued if the moving party demonstrates (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). Counsel for Defendant conceded at the hearing that irreparable injury would result to Plaintiff if the injunction does not issue and that the threatened injury to Plaintiff is greater than any harm the injunction would cause Defendants. The issue whether Plaintiff has established a likelihood of success on the merits of her claim.

### Discussion

■ The Housing Authority has the burden of persuasion in Section 8 termination hearings and "must initially present sufficient evidence to establish a prima facie case" that Plaintiff violated her Section 8 obligations in a manner justifying termination. *Basco v. Machin*, 514 F.3d 1177, 1182 (11th Cir.2008). "Thereafter, the Section 8 participant has the burden of production to show that the individual is a visitor." *Id.*

■ As noted, evidence may be considered at a termination hearing "without regard to admissibility under the rules of evidence applicable to judicial proceedings." 24 C.F.R. § 982.555(e)(5). However, "[a]lthough the rules of evidence are not strictly applied in administrative hearings, there are due process limits on the extent to which an adverse administrative determination maybe based on hearsay evidence." *Basco*, 514 F.3d at 1182. " [H]earsay may constitute substantial evidence in administrative proceedings as long as factors that assure the 'underlying reliability and probative value' of the evidence are present.' " *Id.* (quoting *U.S. Pipe and Foundry Co. v. Webb*, 595 F.2d 264, 270 (5th Cir.1979)).[4] "The reliability and probative force of such evidence depend on 'whether (1) the out-of-court declarant was not biased and had no interest in the result of the case; (2) the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpoenaed the declar-

---

**3.** Plaintiff also challenges Baskin's authority to conduct the hearing under 24 C.F.R. § 982.555(e)(4)(i), which provides that "[t]he hearing may be conducted by any person ... designated by the PHA, other than a person who made or approved the decision under review or a subordinate of this person." Plaintiff argues that as Chair of the Housing Authority Board, Baskin had statutory authority under Fla. Stat. § 421.05 to supervise every aspect of the Housing Authority and that this authority, in itself, renders her, in *every* case, a person who "approved ... the decision under review" at a Section 8 hearing. This contention is rejected. Defendant Sellers–Earnest avers that the Authority's Board sets policy for the authority but "does not operate the [Authority] or make its day-to-day

decisions, that being [Sellers–Earnest's] responsibility as the Executive Director." Sellers–Earnest Aff. ¶ 4. Moreover, there is no evidence whatsoever that Baskin actually participated in the decision to terminate Plaintiff's benefits. Finally, Plaintiff's counsel conceded that the allegation in Plaintiffs motion that "Defendants" (Vanderpool and Sellers–Earnest) selected Baskin (Dkt. 3 at 5) as the hearing officer is factually incorrect.

**4.** The Eleventh Circuit adopted as binding precedent, all decisions the former Fifth Circuit made prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

ant; (3) the information was not inconsistent on its face; and (4) the information has been recognized by courts as inherently reliable.' " *Id.* (quoting *J.A.M. Builders. Inc. v. Herman*, 233 F.3d 1350, 1354 (11th Cir.2000)).[5]

■ Plaintiff contends that the hearing officer's finding was based solely on unreliable hearsay, *i.e.*, the police reports. First, Plaintiff's contention that the police reports constitute hearsay is correct. While the reports may constitute business records, they contain statements attributed to Davis which are hearsay. Since hearsay is admissible, whether the Housing Authority met its burden of persuasion by relying on the police reports depends on whether they are reliable, legally sufficient evidence, not on whether they constituted hearsay.

In *Ervin v. Housing Auth. of Birmingham Dist.*, 281 Fed.Appx. 938, 941 (11th Cir.2008), the participant argued that a Section 8 termination hearing violated her due process rights because the hearing officer "relied solely on hearsay without adequate indicia of reliability and improperly shifted the burden of proof to her, rather than the Housing Authority." The evidence consisted of a witness' description of a letter from a police officer stating that illegal narcotics had been found in the assisted unit, and the Housing Authority's attorney's description of her conversations with the police "concerning an arrest and search" at the unit. *Id.* at 939–40, The court described the evidence as "wholly consist[ing] of hearsay." *Id.* at 942:

> In short, the evidence supporting the adverse administrative decision wholly consisted of hearsay. Although hearsay may constitute substantial evidence in administrative proceedings, on the present record, we cannot say that the "factors that assure the underlying reliability and probative value of the evidence" necessarily are present. *Id.* (quotation marks and citation omitted). Indeed, the only record evidence supporting the decision is Carroll's affidavit in support of summary judgment, in which she describes the hearing she conducted on Ervin's benefits. Put simply, the evidence capable of appellate review in the instant case has less reliability and probative value than the two unauthenticated police reports we considered in Basco. On this record, we must vacate and remand to the district court, for further consideration, in light of our decision in Basco. On remand, the district court should consider whether the "factors that assure the underlying reliability and probative value of the evidence" necessarily are present here.

281 Fed.Appx. at 942.

Like *Ervin*, the evidence in this case *supporting* the hearing officer's decision consists entirely of hearsay.[6] Also as in

---

5. In *Basco,* evidence presented at the Section 8 hearing to show that an unauthorized person was living in the assisted unit consisted of two police reports which contained inconsistent reports identifying the alleged unauthorized resident. 514 F.3d at 1179. The participant challenged the admissibility of the police reports on due process grounds and her inability to cross-examine the declarants. The Eleventh Circuit concluded that the reports, even if reliable, were internally inconsistent and therefore legally insufficient to establish a prima facie case that an unautho-

rized person was living on the unit, declining to decide whether the admission of the police reports complied with procedural *due* process. *Id.* at 1183.

6. *Petitioner's testimony and various documents she submitted certainly do not support the decision. Notwithstanding, the inquiry under Basco is whether the Housing Authority initially presented sufficient evidence to establish a prima facie case that an unauthorized person resided at the unit. If it did not, Plaintiff did not assume the burden of produc-

*Ervin,* the only record evidence supporting the hearing officer's decision is a description of the contents of the police reports, in this case in the hearing officer's decision itself, as the police reports are not of record. While the Court has no doubt that the hearing officer's description of the contents of the police reports is accurate, and readily concludes that the police officers would have no reason to inaccurately report what Davis told them, this Court has no way to assess the reliability of Davis' assertions. He is not, under the circumstances, free from potential bias. As in *Ervin,* this Court is unable to conclude from the record that "the 'factors that assure the underlying reliability and probative value of the evidence' necessarily are present." *id.* (quoting *Basco,* 514 F.3d at 1182). Simply put, the evidence in this record has even "less reliability and probative value than the two unauthenticated police reports ..., considered in *Basco"* *Id.*

▪ Having been arrested for domestic violence based on Plaintiff's accusation, Davis no doubt had a potential·bias against Plaintiff. Further, Plaintiff did not have the authority to subpoena Davis or the reporting officers for the hearing. While Davis' statement of his residency may not be facially inconsistent, that discrete statement in response to it does not under the

circumstances compel a conclusion that he resided at the unit for a determinant amount of time, as opposed to being an occasional overnight or weekend visitor.[7] Simply put, this evidence could not have been tested during the hearing and cannot be said to have been sufficiently reliable to dispossess Plaintiff and her children from their residence. Moreover, even if legally sufficient, Plaintiffs unrebutted testimony that Davis did not reside with her, as opposed to "staying" "sometimes" at her house satisfied her burden of production under *Basco.*[8]

To support her contentions, Plaintiff cites a slip opinion from *Norton v. Johnson,* No. 93–1263–CIV–T–21A, 1993 WL 13683741 (Aug. 17, 2003). In *Norton,* the district court noted that HUD regulations require that a participant be given the opportunity to question any witnesses at the informal hearing and held that, if the participant cannot confront and cross-examine witnesses, the participant has not been afforded "an effective opportunity to defend" as required by *Goldberg v. Kelly,* 397 U.S. 254, 268, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). *See Goldberg,* 397 U.S. at 267–68, 90 S.Ct. 1011 (holding that a welfare recipient must "have ... an effective opportunity to defend by confronting any adverse witnesses....").[9] Like in

---

tion that Davis did not live there and, by her account, was only an occasional visitor. 514 F.3d at 1182

7. During oral argument, the Court pressed the attorneys as to what constituted residing or living at the unit, noting that in *Basco* there were specified minimum temporal periods of residency proscribed by the applicable regulations. The attorneys offered no definitional comments and could point to no instructive information in the applicable regulations.

8. The documents submitted by Plaintiff do not unambiguously demonstrate that Davis "re-

sided" at the assisted unit. Rather, they merely describe the relationship between Davis and Plaintiff, who had "been together s[i]nce November 2008 sexual and staying together at hot[e]lls and his mom and sometime[s] my houses." (Dkt. 3–1 at 15). As for the inconsistency between the Petition and the undated affidavit, while that may bear on Plaintiff's credibility, the hearing officer made no such finding. More importantly, any inconsistency certainly did not establish that Davis resided with Plaintiff.

9. Plaintiff also relies an *McClees v. Sullivan,* 879 F.2d 451, 452 (8th Cir.1989), which held that a report was unreliable where a social

*Norton,* Plaintiff could not confront and cross examine Davis or the officers. Her rights to due process were accordingly violated.

■ The right to subpoena and cross-examine persons who provide information on which an adverse administrative decision is based is not absolute. *See Foxy Lady, Inc. v. City of Atlanta, Ga.,* 347 F.3d 1232, 1237 (11th Cir.2003); *Beauchamp v. DeAbadia,* 779 F.2d 773, 776 (1st Cir.1985); *Passmore v. Astrue,* 533 F.3d 658, 663 n. 3, 665 (8th Cir.2008); *But see Lidy v. Sullivan,* 911 F.2d 1075, 1077 (5th Cir.1990). Moreover, the availability of compulsory process is but one of the factors relevant to the reliability of hearsay evidence in administrative proceedings. *See Basco,* 514 F.3d at 1182.

### Conclusion

Based on the scant evidence of record, Plaintiff has demonstrated a substantial likelihood of success on the merits on her claim that the Housing authority did not meet its burden of persuasion and that she was thereby denied procedural due process. While hearsay police reports may properly be considered by the hearing officer, the police reports relied on in this case do not, in and of themselves, constitute sufficient evidence that Plaintiff violated her "family obligations" by allowing Davis to reside in her unit. In light of the circumstances in which they were made suggesting unreliability and Plaintiff's inability to cross-examine Davis, the hearing

officer's reliance on his statements likely violated the requirements of due process.

Defendant concedes that Plaintiff's eviction constitutes irreparable harm. The injunctive relief requested is not adverse to the public interest and the threatened injury to Plaintiff outweighs whatever damage the injunction may cause Defendant. As Plaintiff is indigent, the Court exercises its discretion to waive Fed.R.Civ.P. 65(c)'s requirement of a bond or other security.

For the foregoing reasons, Plaintiffs Motion for a Preliminary Injunction (Dkt. 3) is **GRANTED.** Defendants are **ORDERED** to reinstate Plaintiff's Section 8 benefits and eligibility, retroactive to the date of termination, and to maintain Plaintiff's Section 8 benefits and eligibility pending further order.

■

security claimant could not "subpoena or cross-examine the [author of the report] because his identity was unknown", and *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), which held that a licensed physician's medical report could constitute substantial evidence in administrative proceedings despite its hearsay character and an absence of cross-examination when the claimant had not exercised his right under the

Social Security regulations to request a subpoena of the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician. *See also Hudson v. Heckler,* 755 F.2d 781, 784 (11th Cir.1985) ("Due process is violated when a [social security] claimant is denied the opportunity to subpoena and cross-examine those who submit medical reports.") (citing *Perales,* 402 U.S. 389, 91 S.Ct. 1420).