**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BIKRAM'S YOGA COLLEGE OF INDIA, L.P., a California limited partnership; BIKRAM CHOUDHURY, an Individual, *Plaintiffs-Appellants*, <br><br> v. <br><br> EVOLATION YOGA, LLC, a New York limited liability company; MARK DROST, an Individual; ZEFEA SAMSON, an Individual, *Defendants-Appellees*. | No. 13-55763 <br><br> D.C. No. 2:11-cv-05506-ODW-SS <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted
May 8, 2015—Pasadena, California

Filed October 8, 2015

Before: John T. Noonan, Kim McLane Wardlaw,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Wardlaw

## SUMMARY[*]

### Copyright

Affirming the district court's grant of partial summary judgment, the panel held that a sequence of yoga poses and breathing exercises was not entitled to copyright protection.

The panel held that under 17 U.S.C. § 102(b), the "Sequence," developed by Bikram Choudhury and described in his 1979 book, *Bikram's Beginning Yoga Class*, was not a proper subject of copyright protection because it was an idea, process, or system designed to improve health, rather than an expression of an idea. Because the Sequence was an unprotectible idea, it was also ineligible for copyright protection as a compilation or choreographic work.

### COUNSEL

Ivana Cingel (argued), Carla Christofferson and Daniel Petrocelli, O'Melveny & Myers LLP, Los Angeles, California, for Defendants-Appellants.

Eric R. Maier (argued) and Louis Shoch, Maier Shoch LLP, Hermosa Beach, California, for Plaintiffs-Appellees.

Kevin M. Fong and Cydney A. Tune, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, California, for Amicus Curiae Yoga Alliance.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

WARDLAW, Circuit Judge:

We must decide whether a sequence of twenty-six yoga poses and two breathing exercises developed by Bikram Choudhury and described in his 1979 book, *Bikram's Beginning Yoga Class*, is entitled to copyright protection. This question implicates a fundamental principle underlying constitutional and statutory copyright protection—the idea/expression dichotomy. Because copyright protection is limited to the expression of ideas, and does not extend to the ideas themselves, the Bikram Yoga Sequence is not a proper subject of copyright protection.

## I. Factual and Procedural History

The Indian practice and philosophy of yoga date back thousands of years. *See* Linda Sparrowe, *Yoga* 9 (2002). Derived from ancient Hindu scriptures, including the Bhagavad Gita, the practice of yoga teaches students to attain spiritual fulfillment through control of the mind and body. *See* Stefanie Syman, *The Subtle Body: The Story of Yoga in America* 4 (2010). Yoga has evolved into a diverse set of spiritual, philosophical, and physical disciplines. Some students practice yoga to transcend the physical body and unite with divine powers; others focus on improving strength, flexibility, and overall physical fitness.

The history of yoga in the United States reflects its wide-ranging appeal. Some of yoga's first American adherents included nineteenth-century transcendentalists, such as Henry David Thoreau and Ralph Waldo Emerson, who were fascinated by yoga's approach to achieving enlightenment.

In the early twentieth century, yoga grew more popular as scientists and physicians began to study the physical benefits of the practice. These physical benefits caught the attention of Hollywood celebrities, including Gloria Swanson, Greta Garbo, and Marilyn Monroe, who embraced yoga as a tool to fight illness and aging. *See* Pankaj Mishra, *Posing as Fitness*, N.Y. Times, July 23, 2010.[1]    By the 1960s, Americans increasingly turned to yoga as a "non-religious, decidedly unspiritual" form of physical exercise.  Sparrowe, *supra*, at 50.

In 1971, Bikram Choudhury, the "self-proclaimed 'Yogi to the stars,'" *id.* at 56, arrived in Beverly Hills, California. He soon became a central figure in the growing popularity of yoga in the United States.  Born and raised in Calcutta, India, Choudhury began studying yoga at age four and learned hundreds of traditional Hatha yoga "asanas," or individual poses.  Hatha yoga places particular emphasis on the physical components of yoga.  Choudhury developed a sequence of twenty-six asanas and two breathing exercises, arranged in a particular order, which he calls the "Sequence." *See* Bikram Choudhury, *Bikram's Beginning Yoga Class* (1979). Choudhury opened his own studio, where he began offering "Bikram Yoga" classes.  In a Bikram Yoga class, the Sequence is practiced over the course of ninety minutes, to a series of instructions (the "Dialogue"), in a room heated to 105 degrees Fahrenheit to simulate Choudhury's native Indian climate.

Choudhury popularized the Sequence by marketing the many health and fitness benefits it provides.  Choudhury

---

[1] This article may be found at http://www.nytimes.com/2010/07/25/books/review/Mishra-t.html.

informs prospective students that his "system of Hatha Yoga is capable of helping you avoid, correct, cure, heal, or at least alleviate the symptoms of almost any illness or injury." He claims that he developed the Sequence after "many of years of research and verification . . . using modern medical measurement techniques." He tells reporters that he extended the careers of professional athletes, including Kareem Abdul-Jabbar and John McEnroe. This message has resonated with an American audience: as the complaint in this action explains, "[p]ublic demand for Bikram Yoga classes grew steadily once Bikram Yoga participants realized that Bikram's unique yoga style and method offered them tremendous physical, mental and other benefits."

In 1979, Choudhury published the book *Bikram's Beginning Yoga Class*, which includes descriptions, photographs, and drawings of the Sequence's twenty-six poses and two breathing exercises. Choudhury registered the book with the U.S. Copyright Office in 1979. In 2002, he also registered the "compilation of exercises" contained in the book, using a supplementary registration form that referenced back to the 1979 book.[2]

In 1994, Choudhury introduced the "Bikram Yoga Teacher Training Course." In 2002 and 2005, respectively, Mark Drost and Zefea Samson enrolled in and successfully completed the three-month Bikram Yoga Teacher Training

---

[2] Choudhury has registered several other works with the Copyright Office, including Bikram's Beginning Yoga Class (2d ed.) (2000), Bikram's Beginning Yoga Class (sound cassette) (2002), Bikram's Yoga College of India Beginning Yoga Dialogue (2002), Bikram's Yoga College of India: Yoga Teacher Training Course: Curriculum Outline (2002), Yoga for Pregnancy (2002), Bikram's Advanced Yoga Class (2006), and Bikram's Yoga (2007).

course. In 2009, Drost and Samson founded Evolation Yoga, LLC. Evolation Yoga offers several types and styles of yoga, including "hot yoga," which is similar to "Bikram's Basic Yoga System." Evolation acknowledges that hot yoga "includes 26 postures and two breathing exercises and is done for 90 minutes, accompanied by a series of oral instructions, in a room heated to approximately 105 degrees Fahrenheit."

On July 1, 2011, Choudhury and Bikram's Yoga College of India, L.P. ("Choudhury")[3] filed a complaint in the Central District of California alleging, *inter alia*, that defendants Evolation Yoga, LLC, Mark Drost, and Zefea Samson ("Evolation") infringed "Bikram's Copyrighted Works through substantial use of Bikram's Copyrighted Works in and as part of Defendants' offering of yoga classes." On November 12, 2012, Evolation moved for partial summary judgment as to Choudhury's claim of copyright infringement of the "Sequence." The district court granted Evolation's motion, ruling that the "Sequence is a collection of facts and ideas" that is not entitled to copyright protection. The parties settled all remaining claims against each other, and Choudhury timely appealed as to the "Sequence."

## II. Standard of Review

"We review de novo a district court's grant of partial summary judgment, and may affirm on any ground supported by the record." *White v. City of Sparks*, 500 F.3d 953, 955 (9th Cir. 2007) (citation omitted). "After 'viewing the

---

[3] For the purposes of this appeal, it is not necessary to distinguish between Bikram Choudhury, the individual, and Bikram's Yoga College of India, LP. Accordingly, we refer to all Plaintiffs-Appellants as Choudhury.

evidence in the light most favorable to the nonmoving party,' we determine 'whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.'" *Id.* (quoting *Am. Civil Liberties Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003)).

## III.  Discussion

Though Choudhury emphasizes the aesthetic attributes of the Sequence's "graceful flow," at bottom, the Sequence is an idea, process, or system designed to improve health. Copyright protects only the expression of this idea—the words and pictures used to describe the Sequence—and not the idea of the Sequence itself.  Because the Sequence is an unprotectible idea, it is also ineligible for copyright protection as a "compilation" or "choreographic work."  The district court properly granted partial summary judgment in favor of Evolation because the Sequence is not a proper subject of copyright.

### A.  The Sequence Is an Unprotectible Idea.

Section 102(a) of the Copyright Act of 1976 sets forth the proper subjects of copyright protection.  17 U.S.C. § 102(a). Section 102(b) expressly excludes protection for "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." *Id.* § 102(b).  Section 102(b) codifies the "idea/expression dichotomy," under which "every idea, theory, and fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication." *Golan v. Holder*, 132 S. Ct. 873, 890 (2012) (quoting *Eldred v. Ashcroft*,

537 U.S. 186, 219 (2003)); *see also Frybarger v. Int'l Bus. Machs. Corp.*, 812 F.2d 525, 529 (9th Cir. 1987) (explaining that Section 102(b) "expressly codified" this principle); H.R. Rep. No. 94–1476, at 57 (1976) (explaining that the "purpose [of Section 102(b)] is to restate . . . that the basic dichotomy between expression and idea remains unchanged").

The idea/expression dichotomy has two constitutional foundations: the Copyright Clause and the First Amendment. Under the Copyright Clause, "[t]he primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.'" *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) (quoting U.S. Const. art. I, § 8, cl. 8). Thus, "[t]he 'constitutional command' . . . is that Congress, to the extent it enacts copyright laws at all, create a 'system' that 'promote[s] the Progress of Science.'" *Eldred*, 537 U.S. at 212 (quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 6 (1966)). "To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Feist*, 499 U.S. at 349–50. At the same time, the idea/expression dichotomy "strike[s] a definitional balance between the First Amendment and the Copyright Act by permitting free communication of facts while still protecting an author's expression." *Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 556 (1985); *see also Eldred*, 537 U.S. at 219 (describing the idea/expression dichotomy as a "built-in First Amendment accommodation[]"); *L.A. News Serv. v. Tullo*, 973 F.2d 791, 795 (9th Cir. 1992) ("Copyright law incorporates First Amendment goals by ensuring that copyright protection extends only to the forms in which ideas and information are expressed and not to the ideas and information themselves."); 5 Melville B. Nimmer & David

Nimmer, *Nimmer on Copyright* § 19E.04[B] (2015) ("[F]ree access to ideas is vital not only for copyright law but also for the maintenance of the democratic dialogue . . . .").

In *Baker v. Selden*, 101 U.S. 99 (1879), the Supreme Court addressed the protection copyright law provided to a book, a classic subject of copyright protection, explaining a *system* of book-keeping. *Id.* at 99–100. The Court held that the book's expression of the book-keeping system was protected, but the system of book-keeping itself was not entitled to copyright protection. *Id.* at 102. The Court explained:

> The description of the art in a book, though entitled to the benefit of copyright, lays no foundation for an exclusive claim to the art itself. The object of the one is explanation; the object of the other is use. The former may be secured by copyright. The latter can only be secured, if it can be secured at all, by letters-patent.

*Id.* at 105.

Following *Baker*, and recognizing this vital distinction between ideas and expression, courts have routinely held that the copyright for a work describing how to perform a process does not extend to the process itself. In *Palmer v. Braun*, 287 F.3d 1325 (11th Cir. 2002), for example, the Eleventh Circuit held that meditation exercises described in a copyrighted manual on exploring the consciousness were "a process" unentitled to copyright protection. *Id.* at 1334. The court explained that the "exercises, while undoubtedly the product of much time and effort, are, at bottom, simply a

process for achieving increased consciousness. Such processes, even if original, cannot be protected by copyright."[4] *Id.* Similarly, in *Publications International, Ltd. v. Meredith Corp.*, 88 F.3d 473 (7th Cir. 1996), the Seventh Circuit held that recipes contained in a copyrighted cookbook are not entitled to copyright protection, for they merely "describe a procedure by which the reader may produce many dishes," and "there can be no monopoly in the copyright sense in the ideas for producing certain foodstuffs." *Id.* at 481. Finally, in *Seltzer v. Sunbrock*, 22 F. Supp. 621 (S.D. Cal. 1938), which predates the Copyright Act of 1976 but applies *Baker*, the court held that the copyright in a manual describing how to organize roller-skating races does not extend to the rules for the races themselves. *Id.* at 630. The court explained, "[w]hat [the author] really composed was a description of a system for conducting races on roller skates. A system, as such, can never be copyrighted. If it finds any protection, it must come from the patent laws." *Id.* (citing *Baker*, 101 U.S. 99).

Here, we must similarly determine not the validity of a copyright but rather its scope.[5] Does Choudhury's copyright

---

[4] *Cf. Arica Institute, Inc. v. Palmer*, 970 F.2d 1067, 1075 (2d Cir. 1992) (holding that the owner of copyrights in training materials describing ancient Sufi methods to "better understand oneself and one's interactions with others" was judicially estopped from claiming copyright protection for the program techniques, in light of representations in commercial publications that the techniques were "based upon . . . proven scientific knowledge" and "provable in the laboratory and clinically").

[5] As noted above, Choudhury obtained a copyright for a "compilation of exercises" through his 2002 supplementary registration to *Bikram's Beginning Yoga Class*, which was first published in 1979. Choudhury claims that the 2002 supplementary registration relates back to the 1979 registration. In Choudhury's view, the supplementary registration thus

protection for his 1979 book extend to the Sequence itself? Under the fundamental tenets of copyright law and consistent with the precedents discussed above, the answer is no.

As Choudhury describes it, the Sequence is a "system" or a "method" designed to "systematically work every part of the body, to give all internal organs, all the veins, all the ligaments, and all the muscles everything they need to maintain optimum health and maximum function."   In *Bikram's Beginning Yoga Class*, Choudhury explains that he "arrived at the sequence of postures" after "[researching] the diseases and the postures and after many years of research and verification . . . using modern medical measurement techniques."   The book tells readers that "Bikram's twenty-six exercises systematically move fresh, oxygenated blood to one hundred percent of your body, to each organ and fiber, restoring all systems to healthy working order, just as Nature intended. "  Bonnie Jones Reynolds, *Introduction* to *Bikram's Beginning Yoga Class*, at xi (1979).  This text promises readers that Choudhury's "system of Hatha Yoga is capable of helping you avoid, correct, cure, heal, or at least alleviate the symptoms of almost any illness or injury."

Also illuminating is Choudhury's spoken Dialogue, which accompanies the Sequence.  Before the Sequence's first breathing exercise, for example, the instructor tells students, "[The exercise] is good for the lungs and respiratory system.

---

issued within five years of first publication and therefore serves as "prima facie evidence of the validity of the copyright." 17 U.S.C. § 410(c).  Here, however, we need not decide whether Choudhury's supplementary registration is prima facie evidence of the validity of the copyright, for even if it were, the undisputed facts are sufficient to overcome any presumption of validity.

This exercise expands your lungs to their maximum expansion capacity.  And it improves the elasticity of your lungs."  Before the twelfth pose, the instructor explains:

> Every exercise in the world you do, you burn energy/calories like driving a car burns gas. The tank is empty, you need to fill it up again. Hatha Yoga class is a gas station, it is the only place in the world where you gain energy instead of burning energy.  Asana is the only *natural* physical activity in the world because it is scientific [and] with the help of science, we can explain nature.

An essential element of this "system" is the order in which the yoga poses and breathing exercises are arranged. *Bikram's Beginning Yoga Class* instructs readers, "Do the poses in the strict order given in this book.  Nothing about Bikram's Beginning Yoga Class is haphazard.  It is designed to scientifically warm and stretch muscles, ligaments, and tendons in the order in which they should be stretched." *Bikram's Beginning Yoga Class*, *supra*, at xi.  For instance, Choudhury explains, "Camel Pose (Ustrasana) stretches the abdomen and compresses the spine; so for the next posture, I chose the Rabbit Pose (Sasangasana), which does the converse: stretches the back and compresses the abdomen."[6] One *Yoga Journal* article explains that "[a]ccording to

---

[6] A recent research study published in the *Journal of Strength and Conditioning Research* further explains the clinical effects of the Sequence's composition: "The combination of rapid transition between postures and environmental heat stress produces a substantial cardiovascular response and muscle fatigue."  Brian L. Tracy & Cady E.F. Hart, *Bikram Yoga Training and Physical Fitness in Healthy Young Adults*, 27 J. Strength & Conditioning Res. 822, 823 (2013).

Bikram, each posture in his series forms the perfect basis for the next, warming and stretching the appropriate muscles, ligaments and tendons." Loraine Despres, *Yoga's Bad Boy: Bikram Choudhury*, Yoga J., Aug. 28, 2007.[7]

Choudhury thus attempts to secure copyright protection for a healing art: a system designed to yield physical benefits and a sense of well-being. Simply put, this attempt is precluded by copyright's idea/expression dichotomy, codified by Section 102(b). As the Supreme Court explained in *Baker*, "Certain mixtures are found to be of great value in the healing art. If the discoverer writes and publishes a book on the subject (as regular physicians generally do), he gains no exclusive right to the manufacture and sale of the medicine; he gives that to the public." 101 U.S. at 102–03. Thus, for example, the copyright for a book describing how to perform a complicated surgery does not give the holder the exclusive right to perform the surgery. Like the series of movements a surgeon makes, the Sequence is, as Choudhury tells readers, a method designed to "cure, heal, or at least alleviate" physical injuries and illness. Monopoly protection for such a method "can only be secured, if it can be secured at all, by letters-patent." *Id.* at 105; *see also Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1526 (9th Cir. 1992), *as amended* (Jan. 6, 1993) ("In order to enjoy a lawful monopoly over the idea or functional principle underlying a work, the creator of the work must satisfy the more stringent standards imposed by the patent laws."). In light of *Baker* and its progeny, Choudhury's healing methodology is not eligible for protection by copyright. Indeed, if it is entitled to protection

---

[7] This article may be located at http://www.yogajournal.com/ article/lifestyle/yoga-s-bad-boy-bikram-choudhury/.

at all, that protection is more properly sought through the patent process.[8]

That the Sequence may produce spiritual and psychological benefits makes it no less an idea, system, or process and no more amenable to copyright protection. Choudhury's personal declaration explains that the Sequence offers "spiritual benefits" to his students and "lead[s] to a general sense of peace and well-being that is undoubtedly of benefit to all of us." Like the meditation exercises designed to achieve greater consciousness in *Braun*, 287 F.3d at 1334, the Sequence sets forth a method to attain identifiable, if spiritual and psychological, results: a "sense of well-being" and "boundless energy." *Bikram's Beginning Yoga Class*, *supra*, at xi.[9] As such, it falls within the Copyright Act's definition of an idea, process, or system excluded from copyright protection. *See* 17 U.S.C. § 102(b).

Choudhury contends that the Sequence's arrangement of postures is "particularly beautiful and graceful." But beauty is not a basis for copyright protection. The performance of many ideas, systems, or processes may be beautiful: a surgeon's intricate movements, a book-keeper's careful notations, or a baker's kneading might each possess a certain grace for at least some viewers. Indeed, from Vermeer's

---

[8] We do not opine on whether the Sequence is, in fact, patentable.

[9] Choudhury's website features research, including a report presented at the Anxiety and Depression Association of America Conference, which concludes that Bikram Yoga may reduce stress, anxiety, and depression among women at risk for mental health problems. *See* Fran Lowry, *Hot Yoga Cools Anxiety, Relieves Depression*, Medscape (Apr. 13, 2015), *reproduced at Research*, Bikram Yoga, http://www.bikramyoga.com/BikramYoga/Research.php (last visited Sept. 16, 2015).

milkmaid to Lewis Hine's power house mechanic, the individual engrossed in a process has long attracted artistic attention.  But the beauty of the process does not permit one who describes it to gain, through copyright, the monopolistic power to exclude all others from practicing it.  This is true even where, as here, the process was conceived with at least some aesthetic considerations in mind.  Just as some steps in a recipe may reflect no more than the author's belief that a particular ingredient is beautiful or that a particular cooking technique is impressive to watch and empowering to practice, some elements in Choudhury's Sequence may reflect his aesthetic preferences.  Yet just like the recipe, the Sequence remains unprotectible as a process the design of which primarily reflects function, not expression.

In drawing the "difficult" line between idea and expression in this case, we are mindful of the "guiding consideration" of the idea/expression dichotomy: "the preservation of the balance between competition and protection reflected in the patent and copyright laws."  *CDN Inc. v. Kapes*, 197 F.3d 1256, 1262 (9th Cir. 1999) (quoting *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971)).  As in *Baker*, the "object" of the book *Bikram's Beginning Yoga Class* is "explanation": it tells readers how to perform the Sequence and encourages them to try it. *Baker*, 101 U.S. at 105.  The introduction to *Bikram's Beginning Yoga Class*, for example, urges the audience to: (i) "turn to the Contents page," (ii) "read through the book," (iii) "build gradually," and (iv) "do the poses in the strict order given in this book."  *Bikram's Beginning Yoga Class*, *supra*, at ix–xi.  Like a book explaining "Book-keeping Simplified," 101 U.S. at 100, *Bikram's Beginning Yoga Class* sets out to "communicate to the world the useful knowledge which it contains."  *Id.* at 103.  It invites readers to practice

the method it describes. "But this object would be frustrated if the knowledge could not be used without incurring the guilt of piracy of the book." *Id.* Consumers would have little reason to buy Choudhury's book if Choudhury held a monopoly on the practice of the very activity he sought to popularize. Rather than "stimulat[ing] artistic creativity for the general public good," copyright protection for the Sequence would prevent the public from engaging with Choudhury's idea and building upon it. *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013) (quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975)).

## B. *The Sequence Is Not a Copyrightable Compilation*.

Choudhury contends that the Sequence is entitled to copyright protection as a "compilation." Specifically, Choudhury claims that the Sequence qualifies for copyright protection because his "selection, coordination, and arrangement" of twenty-six poses and two breathing exercises create a coherent and expressive composition. The district court correctly rejected this argument.

The Copyright Act identifies compilations as a proper subject of copyright. Section 103 of the Copyright Act provides that "[t]he subject matter of copyright as specified in section 102 includes compilations." 17 U.S.C. § 103(a). A "compilation" is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." *Id.* § 101. It essential to recognize, however, that Section 103 complements Section 102. Thus, while a compilation may be eligible for copyright protection, it must

nevertheless satisfy the requirements of Section 102. A compilation must, in other words, represent an "original work[] of authorship," and "[i]n no case" may copyright protection "extend to any idea, procedure, process, [or] system." *Id.* § 102. The availability of copyright protection for compilations, therefore, does not eliminate Section 102's categorical bar on copyright protection for ideas.

The Supreme Court addressed the relationship between these "two well-established propositions"—that compilations are eligible for copyright but facts and ideas are not—in *Feist*, 499 U.S. 340. In *Feist*, the Court considered whether the collection of names, towns, and telephone numbers in a telephone directory is eligible for copyright protection as a compilation. The Court held that "[a] factual compilation is eligible for copyright if it features an original selection or arrangement of facts, but the copyright is limited to the particular selection or arrangement. In no event may copyright extend to the facts themselves." *Id.* at 350–51.

By claiming copyright protection for the Sequence as a compilation, Choudhury misconstrues the scope of copyright protection for compilations. As we have explained, the Sequence is an idea, process, or system; therefore, it is not eligible for copyright protection. That the Sequence may possess many constituent parts does not transform it into a proper subject of copyright protection. Virtually any process or system could be dissected in a similar fashion. *Baker*'s examples of "how-to" treatises are instructive: "A treatise on . . . the construction and use of ploughs, or watches, or churns[,] . . . or on the mode of drawing lines to produce the effect of perspective" would likely list the steps necessary to perform the process it describes. 101 U.S. at 102. The watchmaking treatise's author could not claim a copyright in

the process of making a watch, however, by breaking down the process into multiple steps and labeling it a "compilation." Recipes further illustrate the point: a cake recipe could be viewed as a "compilation" of carefully arranged and selected steps—which may, of course, reflect the personal preferences and tastes of the recipe's author—yet the recipe would remain, in most instances, a process that is not eligible for copyright protection. *See Meredith*, 88 F.3d at 480–81. Likewise, Choudhury cannot obtain copyright protection for the Sequence as a compilation by separately identifying the poses and breathing exercises it contains.

Moreover, according to Choudhury himself, the medical and functional considerations at the heart of the Sequence compel the very selection and arrangement of poses and breathing exercises for which he claims copyright protection. According to *Bikram's Beginning Yoga Class*, the "strict order" of the poses "is designed to scientifically warm and stretch muscles, ligaments, and tendons in the order in which they should be stretched." *Bikram's Beginning Yoga Class*, *supra*, at xi. Read in the light most favorable to Choudhury, the record demonstrates that the overarching reason for the organization of the poses and breathing exercises in the Sequence is to further the basic goals of the method: to attain "[p]roper weight, muscle tone, glowing complexion, boundless energy, vibrant good health, and a sense of well-being." *Id.* The Sequence's composition renders it more effective as a process or system, but not any more suitable for copyright protection as an original work of authorship.

It makes no difference that similar results could be achieved through a different organization of yoga poses and breathing exercises. Choudhury argues that he could have

chosen from "hundreds of postures" and "countless arrangements of these postures" in developing the Sequence. But the possibility of attaining a particular end through multiple different methods does not render the uncopyrightable a proper subject of copyright. *See BellSouth Advert. & Publ'g Corp. v. Donnelley Info. Publ'g, Inc.*, 999 F.2d 1436, 1443 (11th Cir. 1993) ("The relevant inquiry [under *Feist*] is not whether there is some imaginable, although manifestly less useful, method of arranging business telephone listings."); *see also ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 711–12 (6th Cir. 2005) ("To be sure, [the publisher of a catalog describing a transmission parts numbering system] could have arranged the parts information in other ways that were potentially less clear or useful, but this fact alone is insufficient to demonstrate the creativity necessary for copyright protection.").   Though it may be one of many possible yoga sequences capable of attaining similar results, the Sequence is nevertheless a process and is therefore ineligible for copyright protection.[10]

---

[10] Choudhury argues that the district court granted undue deference to a recent Copyright Office Policy Statement concerning copyright protection for yoga sequences as compilations. *See* Registration of Claims to Copyright, 77 Fed. Reg. 37605 (June 22, 2012).  In this Statement, the Copyright Office explains that

> a claim in a compilation of exercises or the selection and arrangement of yoga poses will be refused registration. . . . The Copyright Office would entertain a claim in the selection, coordination or arrangement of, for instance, photographs or drawings of exercises, but such compilation authorship would not extend to the selection, coordination or arrangement of the exercises themselves that are depicted in the photographs or drawings.

## C. The Sequence Is Not a Copyrightable Choreographic Work.

The district court properly rejected Choudhury's argument that the Sequence is entitled to copyright protection as a choreographic work.[11]  The 1976 Copyright Act extended protection to "pantomimes and choreographic works," which were previously not copyrightable.  Pub. L. No. 94–553, 90 Stat. 2541, 2545 (codified at 17 U.S.C. § 102(a)(4)).  In 1986, the Second Circuit observed that "[e]xplicit federal copyright protection for choreography is a fairly recent development, and the scope of that protection is an uncharted area of the law."  *Horgan v. Macmillan, Inc.*, 789 F.2d 157, 160 (2d Cir. 1986).  This remains true today.

The parties debate the meaning of the term "choreography," which we have not yet defined in the copyright context.  Nor did Congress define the term

---

*Id.* at 37607.  We need not decide whether the district court improperly deferred to the Copyright Office, however, for we "may affirm on any ground supported by the record."  *White*, 500 F.3d at 955 (citation omitted).  The undisputed evidence, viewed in the light most favorable to Choudhury, precludes copyright protection for the Sequence.

[11] Though not dispositive, we note that Choudhury did not register the Sequence as a choreographic work.  Choudhury's Certificate of Registration for *Bikram's Beginning Yoga Class* is for "a nondramatic literary work."  When Choudhury tried to obtain a Certificate of Registration for the Sequence as a "work of performing arts," the Copyright Office denied his application.  The Copyright Office stated that the "concept or idea for a particular manner or style of exercise is not registrable."  Choudhury's subsequent supplementary registration for a "compilation of exercises" is an extension of the original registration for "a nondramatic literary work," and thus is itself a literary work registration.

"choreographic work[]," apparently because its meaning was "fairly settled."  H.R. Rep. No. 94–1476, at 53 (1976).  The legislative history does explain, however, that it is not "necessary to specify that 'choreographic works' do not include social dance steps and simple routines." *Id.* at 53–54. The Second Circuit has relied on the Compendium of Copyright Office Practices as persuasive authority and concluded that "[c]horeography represents a related series of dance movements and patterns organized into a coherent whole." *Horgan*, 789 F.2d at 161 (quoting U.S. Copyright Office, *Compendium II: Compendium of Copyright Office Practices* § 450.03(a) (1984)).  The *Compendium II* defines "dance" as "static and kinetic successions of bodily movement in certain rhythmic and spatial relationships." *Compendium II*, § 450.01.[12]   The "dance movements," according to the *Compendium II*, "must be more than mere exercises, such as 'jumping jacks' or walking steps." *Id.* § 450.03(a).   Finally, the *Compendium II* explains that choreography is "usually intended to be accompanied by music" but "need not tell a story" and need not be presented "before an audience." *Id.* §§ 450.01–450.02.

In this case, we need not decide whether to adopt the Copyright Office's definition of "choreographic work" or fashion another on our own because all categories of works eligible for copyright protection, including choreographic works, are subject to the critical requirements and limitations of Section 102.  The beauty of this section is that it allows for

---

[12] This interpretation is consistent with dictionary definitions.  Webster's defines "choreography" as "the art of symbolically representing dancing." Webster's Ninth New Collegiate Dictionary 237 (9th ed. 1987).  "Dance," in turn, is defined as "a series of rhythmic and patterned bodily movements usually performed to music." *Id.* at 324.

the possibility that the term "original work of authorship" may, as it has, evolve and encompass new forms of expression that, like choreography, are not easily reduced to neat definitions. "Congress recurrently adjusts copyright law to protect categories of works once outside the law's compass." *Golan*, 132 S. Ct. at 892 (listing such categories, including foreign works, dramatic works, photographs, motion pictures, fixed sound recordings, and architectural works). Yet as Congress has responded to new technologies and evolving understandings of creative expression, the idea/expression dichotomy has remained firmly in place. This dichotomy, as this case illustrates, polices the uncertain boundaries of copyrightable subject matter.

The Sequence is not copyrightable as a choreographic work for the same reason that it is not copyrightable as a compilation: it is an idea, process, or system to which copyright protection may "[i]n no case" extend. 17 U.S.C. § 102(b). We recognize that the Sequence may involve "static and kinetic successions of bodily movement in certain rhythmic and spatial relationships." *Compendium II*, § 450.01. So too would a method to churn butter or drill for oil. That is no accident: "successions of bodily movement" often serve basic functional purposes. Such movements do not become copyrightable as "choreographic works" when they are part and parcel of a process. Even if the Sequence could fit within some colloquial definitions of dance or choreography, it remains a process ineligible for copyright protection.

The idea/expression dichotomy, codified in Section 102(b), plays a similar role in defining the scope of protection for a "choreographic work" as it does for compilations. *See Feist*, 499 U.S. at 350–51. In the context of choreographic

works, that role is essential. Our day-to-day lives consist of many routinized physical movements, from brushing one's teeth to pushing a lawnmower to shaking a Polaroid picture, that could be (and, in two of the preceding examples, have been[13]) characterized as forms of dance. Without a proper understanding of the idea/expression dichotomy, one might obtain monopoly rights over these functional physical sequences by describing them in a tangible medium of expression and labeling them choreographic works. The idea/expression dichotomy thus ensures that expansive interpretations of the categories enumerated as proper subjects of copyright will, "[i]n no case," extend copyright protection beyond its constitutional limits. 17 U.S.C. § 102(b).

## IV. Conclusion

Although there is no cause to dispute the many health, fitness, spiritual, and aesthetic benefits of yoga, and Bikram Yoga in particular, they do not bring the Sequence into the realm of copyright protection. The Sequence falls squarely within Section 102(b)'s exclusions from copyright protection, no matter how it is labeled or how ably the label is argued. Therefore, the district court properly granted Evolation's motion for partial summary judgment.

**AFFIRMED.**

---

[13] *See How To Do the 'Lawn Mower' (Dance)*, WikiHow, http://www.wikihow.com/Do-the-%22Lawn-Mower%22-(Dance) (last visited Sept. 16, 2015); *Shake It Like a Polaroid Picture*, Urban Dictionary, http://www.urbandictionary.com/define.php?term= shake+it+like+a+Polaroid+picture (last visited Sept. 16, 2015).