FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEVEN HUBBARD; AMY BAACK, | No. 24-4613 |
| *Plaintiffs - Appellants*, | D.C. No. 3:24-cv-00972-CAB-MMP |
| v. | |
| CITY OF SAN DIEGO; DOES 1-10, | OPINION |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted March 5, 2025
Pasadena, California

Filed June 4, 2025

Before: Mary H. Murguia, Chief Judge, and Gabriel P.
Sanchez and Holly A. Thomas, Circuit Judges.

Opinion by Judge H.A. Thomas

# SUMMARY[*]

## First Amendment

In a case in which two yoga teachers challenge the City of San Diego's prohibition against teaching yoga to four or more persons at the City's shoreline parks or beaches on First Amendment grounds, the panel reversed the district court's denial of plaintiffs' motion for a preliminary injunction and remanded with instructions to enter a preliminary injunction in their favor.

Plaintiffs challenged the City's prohibition against teaching yoga both on its face and as applied to their teaching activities. The district court found that the First Amendment does not protect the teaching of yoga. Alternatively, it determined that the City's prohibition was a valid time, place, and manner restriction.

The panel held that plaintiffs made a clear showing that they were likely to succeed on the merits of their as-applied First Amendment claim. Teaching yoga is speech protected by the First Amendment. A person who teaches yoga communicates and disseminates information about yoga's philosophy and practice through speech and expressive movements. The City's shoreline parks are traditional public forums, and the City's prohibition on teaching yoga is content-based; the City's ordinance defines regulated speech by particular subject matter, drawing distinctions based on the meaning a speaker conveys. Because the ordinance is not content-neutral, it did not qualify as a valid time, place, and

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

manner restriction and is presumptively unconstitutional. The ordinance failed strict scrutiny because the City demonstrated no plausible connection between plaintiffs teaching yoga and any threat to public safety and enjoyment in the City's shoreline parks.

Applying the remaining factors for preliminary injunctive relief, the panel held that plaintiffs demonstrated that they were likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tipped in their favor, and that an injunction was in the public interest. Because the record was underdeveloped with respect to plaintiffs' facial challenge to the City's prohibition, the panel did not address that aspect of their claim.

**COUNSEL**

Bryan W. Pease (argued) and Parisa Ijadi-Maghsoodi, Pease Law APC, San Diego, California, for Plaintiffs-Appellants.

Manuel Arambula (argued), Deputy City Attorney; Mara W. Elliot, City Attorney; San Diego Office of the City Attorney, San Diego, California; for Defendants-Appellees.

# OPINION

H.A. THOMAS, Circuit Judge:

The City of San Diego prohibits teaching yoga to four or more persons at any of the City's shoreline parks or beaches. Steven Hubbard and Amy Baack, two yoga teachers who offer free classes in shoreline parks, challenge the City's prohibition against teaching yoga both on its face and as applied to their teaching activities. The district court denied their motion for a preliminary injunction, finding that the First Amendment does not protect the teaching of yoga. In the alternative, the district court determined that the City's prohibition was a valid time, place, and manner restriction.

We disagree with the district court's conclusions. Teaching yoga is protected speech. The City's prohibition on teaching yoga in shoreline parks is content based and fails strict scrutiny. Hubbard and Baack have clearly demonstrated that they are likely to succeed on the merits of their as-applied challenge, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. We therefore reverse the district court's denial of a preliminary injunction and remand with instructions to enter a preliminary injunction in favor of Hubbard and Baack on their as-applied challenge. Because the record is underdeveloped with respect to Hubbard and Baack's facial challenge to the City's prohibition, we do not address that aspect of their claim.

I.

A.

Hubbard and Baack are yoga instructors who offer free yoga classes in shoreline parks located within the City of San Diego. Yoga is "a diverse set of spiritual, philosophical, and physical disciplines." *Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1035 (9th Cir. 2015). During their classes, Hubbard and Baack raise "an idea or philosophy" for their students to "reflect on throughout class." Hubbard and Baack rely on "foundational yoga texts . . . that instruct yogis on how to live a better[,] more fulfilled life."[1] These foundational texts cover various concepts, including how "to be of service to others, to be free of negativity and selfishness, to be truthful, [and] to practice gratitude and non-harm." Hubbard and Baack also teach their students to practice mindfulness through poses and breathing exercises. Anyone can participate in these classes. Hubbard and Baack accept, but do not require, donations from participants.

In 2024, the City adopted Ordinance No. 21775 (the "Ordinance"). The Ordinance amended the San Diego Municipal Code ("SDMC"), defined teaching yoga as a non-expressive activity, and prohibited the teaching of yoga in shoreline parks and beaches without the City's permission. Under SDMC Section 63.0102, "[e]xcept expressive activity authorized" by Section 63.0502, "it is unlawful to carry on or conduct commercial activity, to provide any service, or to . . . require someone to . . . pay a fee before providing a

---

[1] A "yogi" is "a person who practices yoga" or "an adherent of Yoga philosophy." *Yogi*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/yogi (last visited May 28, 2025).

service, even if characterized as a donation, without the written consent of the City Manager" in public parks and beaches. *Id.* § 63.0102(c)(14) (emphases omitted). **2** "Services" are defined as "activities involving . . . the provision of intangible items to a group of four persons or more at the same time that cannot be returned once they are provided." *Id.* § 63.0102(b).**3** The SDMC then provides a list of "[e]xamples" of services, which "include[s] massage, yoga, dog training, fitness classes, equipment rental, and staging for picnics, bonfires or other activities." *Id.* Under

---

[2] Section 63.0102(c)(14) states:

> Except *expressive activity* authorized by Chapter 6, Article 3, Division 5 of this Code and *sidewalk vending* authorized by Chapter 3, Article 6, Division 1, it is unlawful to carry on or conduct commercial activity, to provide any *service*, or to solicit offers to purchase, barter, or to require someone to negotiate, establish, or pay a fee before providing a *service*, even if characterized as a donation, without the written consent of the City Manager. Written consent of the City Manager includes commercial activity and *services* allowed as part of a lease, permit, or other written permission from the City.

[3] Section 63.0102(b) states:

> *Services* are activities involving the performance of work for others, the rental of furniture or equipment for an activity or event, or the provision of intangible items to a group of four persons or more at the same time that cannot be returned once they are provided. Examples include massage, yoga, dog training, fitness classes, equipment rental, and staging for picnics, bonfires or other activities.

Section 63.0102(c)(15), moreover, "[e]xcept expressive activity authorized" by Section 63.0502, "it is unlawful to set up, maintain, or give any exhibition, show, performance, lecture, concert, place of amusement, or concert hall without the written consent of the City Manager." *Id.* § 63.0102(c)(15) (emphasis omitted). [4] Under Section 63.0502, "[e]xpressive activity means all forms of speech and expressive conduct," but "does not include," among other things, "teaching yoga." *Id.* § 63.0502 (emphasis omitted).[5]

---

[4] Section 63.0102(c)(15) states: "Except *expressive activity* authorized by Chapter 6, Article 3, Division 5, it is unlawful to set up, maintain, or give any exhibition, show, performance, lecture, concert, place of amusement, or concert hall without the written consent of the City Manager."

[5] Section 63.0502 states:

> *Expressive activity* means all forms of speech and expressive conduct, including (1) the distribution of non-commercial information, (2) solicitation of funds, donations, subscriptions, or signatures for a charity, religious organization, non-profit organization, or government entity, (3) performances, and (4) the sale of artwork, recordings of performances, or other items that are inherently communicative in nature and have only nominal value or purpose apart from its communication. Items that are inherently communicative in nature include newspapers, leaflets, pamphlets, bumper stickers, buttons, books, audio, video, compact discs, video discs, records, *visual art* sold by the artist, including prints of the artist's *visual art*, political campaigning activity such as distribution of campaign signs, stickers, or other campaign materials, face painting, and painting henna tattoos.

On May 8, 2024, Baack arrived at her usual teaching spot in a shoreline park and encountered City park rangers. They informed her that the City "does not allow any yoga classes to occur (even for free) on any shoreline park in the area." They also told her that returning to the park to teach would be a criminal offense. When Baack inquired about obtaining a permit to teach yoga at shoreline parks, City employees responded that they "do not issue permits for fitness at any shoreline park."

On May 18 and June 1, 2024, City park rangers stopped Hubbard after he taught yoga classes in a shoreline park and issued him infraction tickets. The June 1 ticket listed two violations: (1) "use of public parks and beaches regulated, yoga" in violation of SDMC § 63.0102(c)(14); and (2) "set up any exhibition, give lecture" in violation of SDMC § 63.0102(c)(15).

## B.

On June 3, 2024, Hubbard and Baack filed a complaint, asserting that the Ordinance violates the First Amendment facially and as applied to their teaching. On July 1, 2024, Hubbard and Baack filed a motion for a preliminary injunction.

---

*Expressive activity* does not include: the sale of food; the sale or creation of *handcrafts*, skin care and beauty products; the sale of natural found items, such as stones and gems; the provision of personal services, such as massage or hair styling; the application of substances *or handcrafts* to others such as piercings or skin care products; teaching yoga or exercise classes; or the creation or sale of mass-produced merchandise or *visual art*.

The district court denied Hubbard and Baack's motion on July 12, 2024. The court concluded that Hubbard and Baack had not demonstrated a likelihood of success on the merits because they failed to "establish[] that the activity of teaching a yoga class is . . . protected speech under the First Amendment." The court determined that, "[t]o the extent that it goes beyond directing or leading poses to discussing potentially the philosophy of yoga, that is an incidental effect on speech." The court found that the Ordinance "is not a content-driven ordinance" but rather is "content-neutral," as "the expressive activities that are excluded involve [and] incorporate many things." The court further reasoned that the mere inclusion of the words "teaching yoga" in the Ordinance "does not make this an ordinance directed at excluding yoga." And it found that "the restrictions being placed by the City as to time, place, and manner . . . [are] appropriate."

The district court concluded that while it did not need to reach the other preliminary injunction factors outlined in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), issuing an injunction was nevertheless not "necessarily in the public interest because the overall enjoyment of the public of these areas . . . extends . . . not just to the plaintiffs for their own personal and private uses." It also reasoned that because "there are other parks available," the City has "not banned the teaching of yoga classes but . . . simply restricted it." The court acknowledged, however, that the City "has excluded the use of beachfront properties" for teaching yoga.

II.

We have jurisdiction under 28 U.S.C. § 1292(a)(1). "We review the denial of a preliminary injunction for abuse of

discretion, but we review *de novo* the underlying issues of law." *Meinecke v. City of Seattle*, 99 F.4th 514, 520 (9th Cir. 2024).

### III.

"A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024) (quoting *Winter*, 555 U.S. at 24). To obtain a preliminary injunction, a plaintiff "must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Id.* at 346 (quoting *Winter*, 555 U.S. at 20).

We begin our analysis with the likelihood of success on the merits, which is "the most important factor" in determining whether a preliminary injunction is warranted. *Meinecke*, 99 F.4th at 521. Our analysis here proceeds in three steps: "First, we must decide whether the relevant speech 'is protected by the First Amendment'; second, 'we must identify the nature of the forum'; and third, 'we must assess whether the justifications for exclusion from the relevant forum satisfy the requisite standard.'" *Id.* (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)).

### A.

We first consider whether teaching yoga is protected speech. "[A] government, including a municipal government vested with state authority, 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Police Dep't of Chicago v. Mosley*,

408 U.S. 92, 95 (1972)). "[P]ure speech is entitled to First Amendment protection unless it falls within one of the 'categories of speech . . . fully outside the protection of the First Amendment,'" none of which is at issue here. *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1058 (9th Cir. 2010) (second alteration in original) (quoting *United States v. Stevens*, 559 U.S. 460, 471 (2010)); *see also Counterman v. Colorado*, 600 U.S. 66, 73–74 (2023) (discussing unprotected categories of speech).

We easily dispose of this first step of our analysis: the First Amendment protects teaching yoga. "An individual's right to speak is implicated when information he or she possesses is subjected to 'restraints on the way in which the information' [is] disseminated." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 568 (2011) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984)). And the First Amendment's protections for speech encompass situations where a teacher's "speech to [students] imparts a 'specific skill' or communicates advice derived from 'specialized knowledge.'" *Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062, 1069 (9th Cir. 2020) (alteration in original) (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 27 (2010)) (discussing vocational training).

Because the Ordinance targets teaching yoga, it plainly implicates Hubbard and Baack's First Amendment right to speak. The practice and philosophy of yoga "date back thousands of years," deriving "from ancient Hindu scriptures." *Bikram's Yoga Coll. of India*, 803 F.3d at 1034. The practice of yoga "teaches students to attain spiritual fulfillment through control of the mind and body." *Id.* at 1034–35. A person who teaches yoga is communicating and disseminating information about this philosophy and

practice through speech and expressive movements.[6] Like vocational training classes, Hubbard's and Baack's classes aim to impart a specific skill and communicate advice derived from specialized knowledge. *See Pac. Coast Horseshoeing Sch.*, 961 F.3d at 1069.

## B.

As to the nature of the forum at issue, "[t]he First Amendment affords special protection to 'places which by long tradition or by government fiat have been devoted to assembly and debate.'" *Camenzind v. Cal. Exposition & State Fair*, 84 F.4th 1102, 1108 (9th Cir. 2023) (quoting *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983)). The parties do not dispute that the City's shoreline parks are traditional public forums. *See ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1099 (9th Cir. 2003) ("The quintessential traditional public forums are sidewalks, streets, and parks.").

## C.

We next consider "whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Cornelius*, 473 U.S. at 797. "[E]ven in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). But "[c]ontent-based laws—those that target speech based on its communicative          content—are          presumptively

---

[6] Indeed, the act of teaching is protected speech even if the subject matter lacks philosophical value. "*Most* of what we say to one another lacks 'religious, political, scientific, educational, journalistic, historical, or artistic value' (let alone serious value), but it is still sheltered from government regulation." *Stevens*, 559 U.S. at 479.

unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163; *see also Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) (en banc) ("A regulation is content-based if . . . the regulation, by its very terms, singles out particular content for differential treatment.").

1.

Here, the content-based nature of the Ordinance is "obvious." *See Reed*, 576 U.S. at 163. The plain language of the Ordinance "defin[es] regulated speech by particular subject matter," "draw[ing] distinctions based on the message a speaker conveys." *Id.* The Ordinance states that "it is unlawful . . . to provide any service, or to . . . require someone to . . . pay a fee before providing a service, even if characterized as a donation," and specifically identifies "yoga" as an activity that constitutes a "service." SDMC §§ 63.0102(c)(14), 63.0102(b) (emphases omitted). While the Ordinance excludes "expressive activity" from this prohibition, it specifically states that "[e]xpressive activity does not include . . . teaching yoga." *Id.* § 63.0502 (emphasis omitted).[7] This is the very definition of a content-based restriction on speech. *See Reed*, 576 U.S. at 169 ("[I]t is well established that '[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic.'" (second alteration in original) (quoting *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 537 (1980))). The City, moreover,

---

[7] The Ordinance defines "expressive activity" as "mean[ing] all forms of speech and expressive conduct, including . . . the distribution of non-commercial information." SDMC § 63.0502.

made clear at oral argument that it views and treats the Ordinance as a content-based restriction, conceding that the Ordinance permits the teaching of subjects such as tai chi and Shakespeare at shoreline parks and beaches, while the teaching of yoga is prohibited.

The City nevertheless argues that the Ordinance is content neutral because it "furthers the City's substantial government interest of preserving the City's parks and beaches for the public." *See TikTok Inc. v. Garland*, 145 S. Ct. 57, 67 (2025) (per curiam) ("Content-neutral laws . . . 'are subject to an intermediate level of scrutiny because in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue.'" (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994))). But "an innocuous justification cannot transform a facially content-based law into one that is content neutral." *Reed*, 576 U.S. at 166; *see also id.* at 165 ("A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993))).[8]

---

[8] The City also argues that teaching yoga "is activity that is regulated because it is commercial activity that gathers large groups of people." But the Ordinance defines yoga as a service, even if it is provided for free. *See* SDMC § 63.0102(b), (c)(14). "Although we must consider the City's limiting construction of the Ordinance, we are not required to insert missing terms into the statute or adopt an interpretation precluded by the plain language of the ordinance." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 946 (9th Cir. 2011) (en banc) (quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 639 (9th Cir. 1998)).

Because the Ordinance is not content neutral, it does not qualify as a valid time, place, and manner restriction, and is presumptively unconstitutional. *See Reed*, 576 U.S. at 163; *see also Berger*, 569 F.3d at 1036 ("To pass constitutional muster, a time, place, or manner restriction must . . . be content-neutral.").

2.

Given the content-based nature of the Ordinance, we will uphold it only if the City meets its burden of proving that the Ordinance "furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 171 (quoting *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)). To survive this strict scrutiny analysis, the City's interest must be one "of the highest order." *Id.* at 172 (quoting *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002)). And "[t]o be narrowly drawn, a 'curtailment of free speech must be actually necessary to the solution.'" *Twitter, Inc. v. Garland*, 61 F.4th 686, 698 (9th Cir. 2023) (quoting *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011)). "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000).

The Ordinance fails this analysis. To defend its prohibition on teaching yoga, the City cites its "important governmental interests" in "protecting the enjoyment and safety of the public in the use of" its shoreline parks. *See* SDMC § 63.0102(a). The City argues that allowing Hubbard and Baack to teach yoga at shoreline parks "would lead to harmful public consequences to the City's safe and effective regulation of its parks and beaches." Although public safety is a compelling interest, *Meinecke*, 99 F.4th at 525—and

even assuming for the sake of argument that public enjoyment is as well—the City has provided no explanation as to how teaching yoga would lead to harmful consequences to these interests, or even what those consequences might be. The City therefore cannot demonstrate that its prohibition against teaching yoga is narrowly tailored to meet its interests.

The Ordinance also "fail[s] as hopelessly underinclusive." *Reed*, 576 U.S. at 171. The Ordinance does not prohibit teaching various other subjects to four or more people in shoreline parks, including those that, like yoga, potentially involve physical movement. Nor does the City even attempt to explain how teaching yoga presents a greater threat to public safety and enjoyment than teaching other subjects.

The City cannot explain, moreover, why an outright ban on teaching yoga is the least restrictive means of meeting its interests. The City already has restrictions on large groups, SDMC § 63.0102(c)(24), and on expressive activity that blocks the "safe flow of pedestrians or other traffic," *id.* § 63.0503(b)(3). It has also designated "expressive activity areas" within parks, which appear to address the same concerns the City raises here. *Id.* § 63.0504(a) (emphasis omitted). Yet the City offers no explanation for why teaching yoga cannot occur in these areas.

Because the City has demonstrated no plausible connection between Hubbard and Baack teaching yoga and any threat to public safety and enjoyment in the City's shoreline parks, the Ordinance fails strict scrutiny. Hubbard and Baack have thus made a clear showing that they are

likely to succeed on the merits of their as-applied First Amendment claim.[9]

## IV.

We last consider the remaining *Winter* factors. "It is axiomatic that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 694 (9th Cir. 2023) (en banc) (alteration in original) (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020)). And "'[i]rreparable harm is relatively easy to establish in a First Amendment case' because the party seeking the injunction 'need only demonstrate the existence of a colorable First Amendment claim.'" *Id.* at 694–95 (alteration in original) (quoting *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022)). It is undisputed that Hubbard and Baack cannot teach yoga in any shoreline park under the Ordinance.

---

[9] We note that neither the parties nor the district court distinguished between Hubbard and Baack's facial challenge and their as-applied challenge. In a First Amendment case that raises a facial challenge to a law, "[t]he question is whether 'a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (second alteration in original) (quoting *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)). In this context, a court must: (1) "assess the . . . laws' scope," and (2) "decide which of the laws' applications violate the First Amendment" and "measure them against the rest." *Id.* at 724–25. Because the record is not sufficiently developed to permit us to engage in this analysis, we do not address whether Hubbard and Baack are entitled to preliminary injunctive relief on their facial challenge. Should Hubbard and Baack continue to pursue preliminary injunctive relief on their facial challenge on remand, the district court should address the issue in the first instance.

Because Hubbard and Baack have demonstrated the existence of a colorable First Amendment claim, they have made a clear showing that they are likely to suffer irreparable harm in the absence of a preliminary injunction.[10]

Hubbard and Baack have also made a clear showing as to the last two *Winter* factors. "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—'merge.'" *Fellowship of Christian Athletes*, 82 F.4th at 695 (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). That Hubbard and Baack "have raised serious First Amendment questions compels a finding that . . . the balance of hardships tips sharply in [their] favor." *Am. Beverage Ass'n v. City & County of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc) (first alteration in original) (quoting *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007)). And "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

## V.

Hubbard and Baack are likely to prevail on their as-applied challenge to the City's prohibition against teaching

---

[10] The City argues that "[t]he status quo in this matter is that the Challenged Ordinance is in effect with applicants being permitted to teach yoga in the City's parks, but not on the beaches or shoreline parks." But the "purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits," *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016), which, in this case, is the legal status of teaching yoga predating the Ordinance, *see Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1191 (9th Cir. 2024).

yoga in San Diego's shoreline parks. We therefore **REVERSE** the district court's denial of a preliminary injunction and **REMAND** with instructions to enter a preliminary injunction in favor of Hubbard and Baack on their as-applied challenge.